Mike Pierce was convicted in the Circuit Court of the Second Judicial District of Bolivar County, Honorable Elzy J. Smith presiding, for delivery and sale of cocaine and was sentenced to serve fifteen (15) years with the Mississippi Department of Corrections and to pay a fine of five thousand dollars ($5,000). Pierce has appealed to this Court and he assigns two (2) errors in the trial below.
According to the State's evidence, on May 22, 1979, confidential informant David Hammontree met with narcotics agents Ron Pitts and Mike Tyson near Alligator, Mississippi. Hammontree and Pitts drove to appellant's rural home followed in a separate automobile by Tyson. Upon arrival there, Hammontree went inside and shortly thereafter returned with appellant to the Pitts automobile. Pitts asked appellant whether he had any cocaine for sale. Appellant answered in the affirmative and offered to sell him two (2) grams for $200.00. Pitts purchased the cocaine from appellant and later, he and Hammontree met Tyson at a nearby roadside park where they examined the packages containing a white powder, which appeared to be cocaine. Subsequently a test of the substance at the crime laboratory verified that it was cocaine.
After his arrest, and upon the trial, appellant denied that he had met with the officers and Hammontree and that he sold cocaine on the occasion mentioned. He testified *Page 731 
that his first knowledge of the matter was on May 13, 1980, when was arrested at his father's home. Appellant's defense was an alibi, corroborated by his father and wife.
(1) Did the lower court err in refusing to permit an independent analysis of the contraband prior to trial?
Appellant was indicted for the sale of cocaine on May 12, 1980; counsel was appointed for him on May 13; arraignment was conducted May 19; and the trial was set for May 26, 1980. On May 20, the court entered an order setting 4:00 p.m. on May 22, as the deadline for filing pretrial motions. At 5:00 p.m. on May 22, counsel for appellant, the prosecutor and the trial judge met in chambers, at which time counsel for appellant requested an extension of the motion deadline. The judge extended the deadline until noon on May 23, with the understanding that no late motion would cause a delay in the trial. On the next day, appellant's attorney filed a motion for continuance setting out a need for additional time in order to obtain an independent laboratory analysis of the contraband. The motion was denied as untimely, since it would delay trial. However, the trial judge did grant appellant access to the contraband and the right to have an analysis made, if and when he desired to do so.
After the trial, appellant had the contraband examined by an analyst of his choice and that examination revealed the substance to be cocaine which corroborated the analysis made by the State Crime Laboratory. Appellant contends that the trial court committed reversible error in refusing to grant a continuance in order that he might have the benefit of an independent analysis prior to trial. In Jackson v. State, 243 So.2d 396 (Miss. 1970), this Court reversed a drug conviction where the defendant's motion for an independent analysis of the substance had been overruled by the lower court. The opinion stated:
 In Armstrong v. State, 214 So.2d 589, 596 (Miss. 1968), we recognized the developing trend toward allowing inspection by the defendant of tangible evidence. After discussion of all pertinent authority, we stated:
 "It is becoming increasingly clear from a study of the foregoing authorities that, although the trial judge has discretionary power in determining whether or not tangible evidence in the possession or under the control of the prosecuting attorney should be given to the defendant for his inspection, nevertheless, the defendant should be permitted to inspect tangible evidence which may be used against him or which may be useful in his defense. This does not mean that a defendant may peruse the private files of a prosecuting attorney or examine his private notes. It does mean, however, that the concept of "due process" and "fair trial" requires that material, tangible evidence must not be concealed from the defendant who is accused of crime. There is no good reason why the defendant in a civil case should be entitled to a more liberal right to tangible evidence in the possession of his adversary under the authority of section 1659, Mississippi Code 1942 Annotated (1956), than is a person under a serious criminal charge."
 The guilt or innocence, prison sentence or acquittal, of the defendant depends entirely upon the identification of the contents of the boxes as marijuana. This substance was relevant, material, competent and, in fact, necessary evidence to defendant's conviction. Under this circumstance we are of the opinion that due process of law requires, upon the court's attention being directed thereto by motion, that the analysis of the substance not be left totally within the province of the state chemist. The defendant having made proper and timely motion for a portion of the substance, it should have been made available to his attorney, as an officer of the court, and under such safeguards as the trial court deemed necessary, for inspection and analysis. We hasten to add that this opinion is limited to the alleged possession or sale of a prohibited substance where the outcome of the case is dependent upon its identification *Page 732 
as contraband. We conclude, therefore, that the lower court erred in not sustaining the defendant's motion for a portion of the seized substance.
 (243 So.2d at 397-398).
In Ladnier v. State, 273 So.2d 169 (Miss. 1973), appellant made an untimely motion for an extension after the jury had been empaneled. The Court affirmed the conviction with the following comment:
 The granting or refusing of motions which should have been made timely before trial, such as motions to produce and inspect that would be time consuming, are left to the sound discretion of the trial judge as are motions for continuances, and his ruling will not be disturbed unless there is a clear showing that injustice resulted therefrom.
 (273 So.2d at 173).
We are of the opinion that the lower court did not err in declining to grant a continuance for time in which to obtain an independent analysis for the reason that the motion was not filed timely. If the examination subsequent to trial had indicated that the contraband substance was not cocaine, that evidence probably would have warranted a new trial even though the motions were not timely filed. However, there has been no showing of prejudice absent the independent analysis at trial. One of two things would have occurred, if that information had been available prior to trial: (1) appellant would not have used his expert to verify the state's analysis, or (2) if he had used the expert, the State's case would have been strengthened against appellant.
(2) Did the lower court err in permitting a tape to be played before the jury which contained evidence of a different drug sale made by appellant on May 21, the day before the subject sale?
Appellant testified in his own behalf at the trial. On direct examination, he was asked and responded to the following question:
 Q. Mike, before this date, have you at any time in your life ever sold any narcotic drugs to any person on the face of this earth?
 A. No, sir. I have never sold no drugs.
On cross-examination, the following transpired:
 BY MR. KNOWLTON:
 Q. You are saying that you — we have all heard you say that it is just a complete denial, isn't it, Mr. Pierce, that you have never seen the person who came in here and said his name was Ron Pitts until he came in here?
 A. That's correct.
 * * * * * *
 Q. And your counsel has asked you the broadest questions possible about your past history with drugs. You are saying that you have just never had anything to do with selling drugs; is that right?
 A. I say I never sold no drugs. I have been caught with possession of marijuana.
 Q. Right, but as far as selling drugs —
 A. — I have not sold no drugs.
 Q. And you are saying specifically in terms of this case and the testimony that you heard from Ron Pitts and from David Hammontree, you are saying specifically that the day before this cocaine transaction, you didn't sell them any drugs that day?
 A. No, sir.
 Q. You couldn't have since you never sold any drugs, right?
 A. That's correct. If I have never sold any, I couldn't have sold him any that day or the day after.
 Q. Right. It is complete denial of ever in your whole life any kind of history of that kind with drugs?
 A. Yes, sir.
 * * * * * *
The appellant denied that the voice on the tape was his. He contends that introduction of the tape was prejudicial and that it related to a separate and distinct crime from the one with which he was charged and tried. The tape was admitted into evidence *Page 733 
and was played before the jury on the ground that it was for impeachment of appellant's testimony as to previous drug sales made by him. In Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1953), Walder was indicted and tried for narcotics possession. He had been previously indicted in 1950 for a similar offense but the indictment was dismissed due to an unlawful search and seizure. At his trial in 1952, Walder testified on direct examination that he had never sold any narcotics to anyone in his life. He repeated the denial during cross-examination, whereupon the prosecution offered evidence of the 1950 drug sale. The trial court permitted the impeachment and, upon appeal, the United States Supreme Court affirmed the trial court and said:
 Take the present situation. Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility.
 (347 U.S. at 65, 74 S.Ct. at 356, 98 L.Ed. at 507)
Also, see Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), wherein the United States Supreme Court stated that a defendant is under a duty to testify truthfully and in order to test the veracity of his statement, the prosecution may utilize traditional truth-testing devices of the adversary process.
We hold that, under the facts of the case sub judice, the lower court properly admitted the tape for the purpose of impeaching appellant's testimony.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur. *Page 1096