472 So.2d 398 (1985)
Sherman TOBIAS
v.
STATE of Mississippi.
No. 54708.
Supreme Court of Mississippi.
June 5, 1985.
Rehearing Denied July 17, 1985.
J. Cliff Thomas, Jr., Crystal Springs, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PRATHER, Justice, for the Court:
This is an appeal from a criminal conviction in the Circuit Court of Copiah County. Sherman Tobias was convicted of uttering a forgery as an habitual criminal and sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections without eligibility for probation or parole.
Tobias appeals assigning as error:
(1) The trial court erred in allowing the state to introduce evidence of another and separate offense;
(2) The trial court erred in allowing an in-court identification of the appellant which was based upon an improper prior out-of-court identification;
(3) The trial court erred in not directing a verdict for the defendant;
(4) The verdict of the jury is contrary to the law and unsupported by the weight of credible evidence;
(5) The sentence of the trial court constitutes cruel and unusual punishment.

I.
On the evening of October 24, 1982, a male customer cashed a check at a convenience store in Crystal Springs, Mississippi. The check was a counter check drawn on the Bank Of The South in the amount of $24.00, made out to a "Charlie Jones" and signed "Charlie Jones". The check was *399 returned by the bank unpaid. According to a representative of the bank, the account number given on the check did not exist and there was no account in the name of Charlie Jones. Jack Heard, the owner of the convenience store, was on duty at the time of the incident. Mr. Heard identified appellant Tobias as the man who cashed the check.
Appellant presented an alibi. Tobias testified that he went fishing with his father until approximately 3:00 p.m. on October 24, 1982. According to the appellant, he then returned home and watched television until about 8:00 or 8:30 p.m. Appellant stated that he then walked to his sister's home and visited with her for approximately 45 minutes, returning to his home and going to bed at 10:00 p.m. Appellant's version of his whereabouts is corroborated by the testimony of his mother, father, sister and brother-in-law.

II.
Did the trial court err in allowing an in-court identification of the appellant which was based upon a prior out-of-court identification?
At trial, convenience store owner Jake Heard positively identified the appellant as the person who gave him the bad check. Defense counsel objected to this in-court identification on the ground that it was tainted by a prior improper out-of-court identification of the appellant. The trial court overruled the objection and this ruling is now assigned as error.
The record reflects that the prior identification took place at the police station two days after the commission of the crime. Police officers told Mr. Heard that they believed they had found the man who had given him the check and that his name was Sherman Tobias. A lineup was arranged consisting of three black males of approximately the same height and age. Mr. Heard identified Tobias from the lineup as the man who passed the check.
In Bankston v. State, 391 So.2d 1005 (Miss. 1980), this Court stated:
[4] In Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court held that even if the pretrial identification procedure had been unnecessarily suggestive the identification did not have to be excluded if upon consideration of the totality of the circumstances there was no substantial likelihood of misidentification. The Court set out five factors to be used in analyzing the totality of circumstances. These factors include:
(1) The opportunity of the witness to view the criminal at the time of the crime;
(2) The witness's degree of attention;
(3) The accuracy of his prior description of the criminal;
(4) The level of certainty demonstrated at the confrontation; and
(5) The time between the crime and the confrontation.
[Manson v. Brathwaite] 432 U.S. [98] at 110-14, 97 S.Ct. [2243] at 2250-53, 53 L.Ed.2d [140] at 151, 153, 154 [(1977)].
391 So.2d at 1008. In the case sub judice, Mr. Heard testified with certainty that it was the appellant who gave him the check. Additionally, only two days passed between the crime and the pretrial identification. Moreover, Mr. Heard testified that Tobias was a light complexed black male whom he recognized as someone who had been in his store before. Finally, Mr. Heard testified that his in-court identification was based upon his observation of Tobias in the store and not upon the pretrial lineup.
Based upon the above circumstances, there was little, if any, likelihood that Mr. Heard's identification of the appellant was mistaken. Accordingly, even if the pretrial lineup was unnecessarily suggestive, the subsequent in-court identification of the witness was not thereby tainted. This assignment of error is without merit.

III.
Did the trial court err in allowing the state to introduce evidence of another separate offense by the appellant?
*400 At the time of the trial, appellant faced another charge arising out of an incident which occurred on October 23, 1982 involving a "no account" check which was cashed at another local convenience store. On cross-examination, the prosecutor questioned the appellant generally regarding his whereabouts on the date of the previous incident and specifically asked the appellant if he had written any checks to a convenience store on Saturday, October 23. Appellant denied having done so. On rebuttal, Ms. Wanda Shields, a local convenience store employee, testified for the state. Ms. Shields identified a counter check which she had cashed on October 23. Ms. Shields stated that the check was returned unpaid and she identified appellant as the man who had cashed the check. Defense counsel objected to this testimony on the grounds that it was evidence of another crime. The trial court held the testimony admissible on the grounds that it was introduced for the purpose of impeachment.
The well settled rule in this state is that proof of a crime distinct from that alleged in an indictment is not admissible against an accused. Mason v. State, 429 So.2d 569 (Miss. 1983); Tucker v. State, 403 So.2d 1274 (Miss. 1981); Allison v. State, 274 So.2d 678 (Miss. 1973); 48 Miss.L.J. 1059, 1078 (1977). Our cases recognize certain limited exceptions to the rule.
Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. See, Smith v. State, 223 So.2d 657 (Miss. 1969), cert. denied, 397 U.S. 1030, 90 S.Ct. 1274, 25 L.Ed.2d 542 (1970); Cummings v. State, 219 So.2d 673 (Miss. 1969), cert. den. 397 U.S. 942, 90 S.Ct. 954, 25 L.Ed.2d 122 (1970). ([Gray v. State], 351 So.2d [1342] at 1345 [Miss. (1977)]).
Tucker v. State, 403 So.2d at 1276. Evidence that appellant cashed a bad check on the day before the incident charged in the indictment does not fall within any of these recognized exceptions to the general rule.
The state's contention that the testimony was admissible for impeachment purposes is without merit. The testimony sought to be impeached was elicited by the prosecution with questions regarding prior conduct of the accused which had not resulted in a conviction. This line of questioning by the prosecution was itself impermissible. Gallion v. State, 469 So.2d 1247 (1985). We conclude that the admission of this evidence regarding a separate and distinct offense which had not resulted in a conviction requires a reversal of this case.
This case is reversed and remanded for retrial due to the improper introduction of inadmissible evidence. We deem it unnecessary to discuss appellant's remaining assignments of error involving matters unlikely to recur upon retrial.
REVERSED AND REMANDED.
PATTERSON, C.J., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
ROY NOBLE LEE and WALKER, P.JJ., dissent.
ROY NOBLE LEE, Presiding Justice, dissenting:
In my view, the majority opinion has departed from established law and has overruled numerous cases upholding the principle that evidence of other crimes, in a proper factual situation, is admissible to identify the defendant. Therefore, I dissent.
The appellant, Sherman Tobias, testified in his own behalf at the trial. In response to questions from his attorney, he denied that handwriting either on the front or back of the October 24, 1982, check, passed *401 to Jake Heard at the Sak-N-Pak Store on Newton Street in Crystal Springs was his handwriting and denied that he passed the check or had been in the Sak-N-Pak Store at any time on the day of October 24, 1982. On cross-examination, he denied over and over that he passed the check, thereupon, he was asked by the prosecuting attorney whether or not on October 23, 1982, he passed a check anywhere, which he denied. Appellant further denied that he had gone in any convenience store in Crystal Springs either on Saturday or Sunday, October 23 and 24. No objection was made to those questions of the prosecuting attorney.
On redirect examination, appellant's attorney went into the matter of the Saturday, October 23, check, and, in connection therewith, the following transpired:
BY MR. THOMAS:
Q. The check that the District Attorney showed you, the second check that's marked for identification only, you testified you have never seen this check?
A. No, sir, never seen that check.
Q. You also testified that you've never seen the check ...
A... . Never seen it ...
Q... . That you've been charged of passing.
A. Yes, sir.
Q. You've never seen either one, is that correct?
A. That's correct, neither one.
The State called Wanda Shields in rebuttal. She worked at Superstop # 24 on South Pat Harrison Drive in Crystal Springs, Saturday, October 23, 1982. She testified that around 9 p.m. on that date, a black male came into the store with a $25.00 check, identified himself as Mike Jackson, and requested her to cash same. After some conversation with him, Ms. Shields had him to write his name, address and telephone number on the back of the check. He gave his address as 263 West Pizza St. The prosecuting attorney asked, if she saw the individual who represented himself as Mike Jackson in the courtroom, and, over objection, she identified appellant as the person for whom she cashed the check. This was the only objection made throughout appellant's testimony as to evidence of another crime. The October 23 check was then introduced in evidence as an exhibit to Ms. Shields' testimony.
Exhibits S-1 and S-2, the indictment check and Wanda Shields' check, respectively, were both drawn on an identical bank check form of Bank of the South, Crystal Springs, Mississippi. They were both returned "NO ACCOUNT." Jake Heard required the person presenting S-1 to him to write his name, and other information, including his address, on the back of the check. The person wrote as his address 253 West Pizza St. Wanda Shields required the person presenting check S-2 to her to write his name, address and telephone number on the back of the check. The address was written as "263 West Pizza St."
First, in my opinion, when the prosecuting attorney asked appellant without objection about the Saturday, October 23, check, and whether or not he passed that check, and when the attorney for appellant, on redirect examination, thoroughly questioned appellant about the October 23 check and obtained an emphatic denial from him that he passed that check, testimony of Wanda Shields and introduction of the October 23 check (S-2) into evidence were admissible for impeachment purposes.
Second, I think that under the decisions of this Court, testimony of Wanda Shields and introduction of Exhibit S-2 were proper for the purpose of identifying appellant, as the person who uttered the forged instrument on October 24 to Jake Heard. In Gray v. State, 351 So.2d 1342 (Miss. 1977), the Court said:
It is well settled in this state that proof of a crime distinct from that alleged in an indictment is not admissible against an accused. There are certain recognized exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to *402 identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. [Citations omitted]. (Emphasis supplied)
351 So.2d at 1345.
The case of Thompson v. State, 309 So.2d 533 (Miss. 1975), involved the prosecution of Thompson for uttering a forged instrument. The lower court permitted the district attorney to question the defendant about the details of his false pretenses convictions in Jones County, Mississippi, on February 11, 1972, (the prosecution of Thompson was in the Circuit Court of Copiah County for uttering a forged check to the Bank of Hazlehurst on December 6, 1971). In Thompson, the Court said:
Defendant argues that it was error for the trial court to permit the district attorney to question the defendant about the details of his conviction of false pretenses in Jones County, Mississippi.
* * * * * *
The two checks (the one described in the district attorney's question and the one negotiated at the Bank of Hazlehurst) were cashed on the same day and were identical except for the amount and the name of the payees. The word "final" was misspelled on both checks.
In prosecutions for uttering forgery, evidence of similar transactions committed at or about the same time as the offense charged are admissible for the purpose of proving identity, intent, knowledge or a common scheme to defraud. Pierce v. State, 213 So.2d 769 (Miss. 1968); 2 Wigmore, Evidence § 309 (1940). Accordingly, the evidence concerning the Laurel check was properly admitted.
309 So.2d at 534.
In Pierce v. State, 213 So.2d 769 (Miss. 1968), Pierce was convicted in the Circuit Court of Bolivar County for uttering a forged check. During the trial, the Court permitted the district attorney to cross-examine Pierce, when he took the stand, as to whether or not he had passed other checks in other counties in the state, and introduced in evidence another check uttered by Pierce in Coahoma County. In affirming the conviction and holding the evidence properly admitted, the Court said:
The general rule seems to be that evidence of other criminal acts of the accused, including other forgeries, is admissible if committed at or about the same time as the offense charged, at least for the purpose of showing the accused's intent, guilty knowledge, identity and motive, and a general scheme or course of conduct. See 22A C.J.S. Criminal Law § 691(12) at 834-836 (1961).
Charles Leverett identified Exhibit No. 4 as a check given him by F.C. Pierce and cashed by Leverett in the Otasco Store in Clarksdale a few days before Christmas, 1966. Leverett bought two watches and gave the balance of the $175.00 check to Pierce. This incident was very close in point of time to the offense charged against the accused. The court correctly allowed Leverett to identify this check and the district attorney to introduce it into evidence.
The district attorney had a right to cross-examine the appellant when he took the stand as to whether or not he had passed similar checks recently in other counties of the state and in adjoining states.
On the trial, no objections were interposed by counsel for the appellant to this portion of the cross-examination.
213 So.2d at 770.
In the more recent case of Pierce v. State, 401 So.2d 730 (Miss. 1981), Pierce was charged with the sale of cocaine. On direct examination he denied ever having sold drugs before in his life. He was questioned about that on cross-examination and the State was permitted to introduce a tape containing evidence of a different drug sale. In holding the tape was proper impeachment, this Court said:

*403 The appellant denied that the voice on the tape was his. He contends that introduction of the tape was prejudicial and that it related to a separate and distinct crime from the one with which he was charged and tried. The tape was admitted into evidence and was played before the jury on the ground that it was for impeachment of appellant's testimony as to previous drug sales made by him. In Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), Walder was indicted and tried for narcotics possession. He had been previously indicted in 1950 for a similar offense but the indictment was dismissed due to an unlawful search and seizure. At his trial in 1952, Walder testified on direct examination that he had never sold any narcotics to anyone in his life. He repeated the denial during cross-examination, whereupon the prosecution offered evidence of the 1950 drug sale. The trial court permitted the impeachment and, upon appeal, the United States Supreme Court affirmed the trial court and said:
Take the present situation. Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility. (347 U.S. at 65, 74 S.Ct. at 356, 98 L.Ed. at 507).
Also, see Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), wherein the United States Supreme Court stated that a defendant is under a duty to testify truthfully and in order to test the veracity of his statement, the prosecution may utilize traditional truth-testing devices of the adversary process.
We hold that, under the facts of the case sub judice, the lower court properly admitted the tape for the purpose of impeaching appellant's testimony.
401 So.2d at 732-33.
I am of the opinion that the testimony of Wanda Shields and the evidence of the October 23 check (S-2) were properly admitted and that the conviction of appellant should be affirmed. Therefore, I dissent from the majority opinion.
WALKER, P.J., joins this dissent.