479 So.2d 706 (1985)
Terry Lee QUINN
v.
STATE of Mississippi.
No. 55904.
Supreme Court of Mississippi.
October 30, 1985.
Rehearing Denied December 4, 1985.
*707 Cleve McDowell, Cleveland, Carver A. Randle, Indianola, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal arises out of events occurring on the evening of November 8, 1983, in Drew, Mississippi. At that time and place an undercover agent for the Mississippi Bureau of Narcotics purchased from Terry Lee Quinn, defendant below and appellant here, 9.8 grams of marijuana for the sum of $75.00.
On June 6, 1984, Quinn and another, Robert Banks,[1] were formally charged with the sale of a Schedule I controlled substance in an indictment returned by the Sunflower County Grand Jury. The indictment charged that Quinn thus violated the Mississippi Controlled Substances Law, Miss. Code Ann. §§ 41-29-139(a)(1) and (b)(3). Quinn entered a plea of not guilty to the charges.
On August 6, 1984, the case was called for trial in the Circuit Court of Sunflower County, Mississippi. The next day the jury returned a verdict finding Quinn guilty as charged, whereupon Quinn was committed to the custody of the Mississippi Department of Corrections for a period of three (3) years, with one (1) year suspended.
On August 9, 1984, Quinn moved for a new trial which motion was denied by order entered August 11, 1984. Quinn now appeals to this Court. We affirm.

II.
On the evening of November 8, 1983, Narcotics Bureau Agent Jim Scanlon and confidential informant, James Stowers, were working the Drew, Mississippi area. Shortly after 6:00 in the evening, as their truck was proceeding down Wilson Street, Scanlon and Stowers were flagged down in front of Eddie's Cafe by Terry Lee Quinn and Robert Banks. Quinn and his companion approached the passenger's side of the truck, where Stowers was sitting. Stowers exited the vehicle and walked to the rear with Quinn and Banks.
After a short period of time, Scanlon asked Quinn if he would sell him some cocaine. Quinn said that none was available, but he had some sensimilla, a variety of marijuana without seeds, which he would sell for $75.00. In due course, Quinn produced to Scanlon a package containing a green vegetable type matter, later identified by the state's forensic drug analyst as 9.8 grams of marijuana. Scanlon delivered the $75.00 to Quinn and then left.

III.
Quinn's principal complaint on this appeal is that the state was permitted, over his vociferous objection, to offer evidence that he made another sale of marijuana on November 4, 1983  four days prior to the offense charged in the instant indictment. The colloquy of which Quinn complains occurred during cross-examination of him by the prosecuting attorney:
Q. Did you know that Jim Scanlon was a Narcotics Agent?
A. No, mam.
Q. You didn't know it that night, either, did you?
A. I do not know him.
Q. Do you deny having met him by being introduced to him by James Stowers?
A. Do I deny?
Q. That James Stowers introduced you to Jim Scanlon?
A. No.
Q. Not on November 4th of 1983?

*708 A. No, mam.
Q. Do you deny having sold marijuana, along with Robert Banks, on November 4, 1983, to Jim Scanlon?

[At that point, defendant interposed his objection which was overruled by the trial judge, who announced that Quinn would be given a continuing objection to this line of questioning.]
Q. Mr. Quinn, is it true that you sold marijuana to Jim Scanlon and told him that you were working as Robert Banks' partner, on November 4, 1983, in front of Eddie's place in Drew, Mississippi?

A. No, it is not true.

Q. It is not true?

A. No, mam.

Q. Is it true that you told Jim Scanlon that Robert Banks was your partner and that you were helping him sell [sic] dope?
A. No, mam.
[Emphasis added.]
Prior to these questions being put by the prosecution Quinn had given the following testimony while on direct examination by his own attorney.
Q. Now, Mr. Quinn, I ask you this question, and please answer truthfully: Do you sell marijuana?

A. No, sir.

Q. Have you at any time ever sold marijuana to anyone?

A. No, sir.

Q. Did you sell marijuana to Jim Scanlon on the evening of November 8, 1983?

A. No, sir.

Q. And you did not talk to anyone in a pickup truck?
A. No, sir.
[Emphasis added].
Generally, evidence of a prior criminal activity on the part of one criminally accused where the prior offense has not resulted in a conviction is inadmissible. Donald v. State, 472 So.2d 370, 372 (Miss. 1985); Hughes v. State, 470 So.2d 1046, 1048 (Miss. 1985); West v. State, 463 So.2d 1048, 1051-52 (Miss. 1985); Tucker v. State, 403 So.2d 1274, 1275 (Miss. 1981). Quinn relies on this rule for support for his proposition that evidence that he made a sale of marijuana on November 4, 1983, was inadmissible.
Without doubt, testimony that Quinn was involved in a November 4 marijuana sale was not admissible to establish the truth of the facts there asserted. When, however, in response to questions by his own attorney, Quinn testified on direct examination that he did not sell marijuana and had never sold marijuana to anyone at any time, he "opened the door". Evidence of the prior marijuana sale was still not admissible to establish the truth of those facts. Such questions were, however, permissible for purposes of impeaching Quinn's credibility. This question has been considered in Pierce v. State, 401 So.2d 730, 732-33 (Miss. 1981) which holds that in similar circumstances cross-examination questions such as those put by the state were legitimate for impeachment purposes.
We have recently considered a related question in Tobias v. State, 472 So.2d 398 (Miss. 1985). In Tobias we held the state's impeachment effort was impermissible and reversed. Tobias is distinguished from Pierce and the case at bar in that in Tobias it was the state that initiated the matter by eliciting from the defendant the response it later sought to impeach by showing the defendant's prior criminal but short of conviction activities. For reasons we trust are obvious, it is wholly unfair that the state may circumvent our well established rule from the Donald, Hughes, West and Tucker cases cited above in the manner attempted in Tobias.
To be sure, every defendant brought to trial may, if he wishes, try to paint himself as being as pure as the driven snow. He may do this by testifying directly, in response to questions from his own lawyer, that he has never been involved in any criminal activity anywhere. When he indulges in this tactic. however, it is only fair that the State should have the right to test *709 the credibility of such assertions through the normal process of impeachment.
In short, on the authority of Pierce v. State, 401 So.2d 730, 732-33 (Miss. 1981), this assignment of error is without merit and is denied.

IV.
Quinn next argues that the trial court erred when it allowed Agent Scanlon to testify regarding the conversations which took place in connection with the sale on November 8, 1983. It appears that through a hidden recorder, Scanlon had made a rather feeble effort to tape these conversations. This assignment appears to rest upon the notion that the best evidence requires, even under these circumstances, that the tape recording be used to the exclusion of direct testimony by the witness of what he remembers.
Initially, the state offered the tape but it was excluded. The trial judge's determination that the tape should be excluded was explained.
BY THE COURT:
I just don't think  the tape, to me, just has no meaning whatsoever. I cannot distinguish what is said. I can catch a word, maybe, every tenth word, and I'm sitting this close to it. If the jury even played it in the jury room, I don't think they would understand it. I understand your problem.
Thus, the tape was excluded because what was being said by the parties involved could not be heard. Scanlon was allowed to testify directly as to the conversations.
On its merits the assignment must be denied. In Sparks v. State, 412 So.2d 754 (Miss. 1982), the Court was confronted a similar issue and said:
In Talbert v. State, 347 So.2d 352 (Miss. 1977), this Court held the best evidence rule applies only to documentary evidence. 29 Am.Jur.2d, Evidence section 436 (1967), provides in part:
Where proof of a conversation has been of two different kinds, namely a recording thereof and testimony by witnesses who overheard it, it has been argued that both the recording and the testimony were the best evidence; however, the courts have not relegated either to a secondary position, but have held that both types of evidence are equally competent primary evidence, and that one is not to be excluded because of the existence of the other.

412 So.2d at 756. [Emphasis added].
Accord Winters v. State, 473 So.2d 452, 458 (Miss. 1985); Phillips v. State, 374 So.2d 824, 825-826 (Miss. 1979), overruled on other grounds, Baker v. State, 391 So.2d 1010 (Miss. 1980).
The best evidence rule does not exclude Agent Scanlon's testimony relating to the conversations said to have been tape recorded because he participated in the marijuana sale and had first hand knowledge of the facts. Winters v. State, 473 So.2d at 458. If counsel opposite had wished to use those tape recordings as substantive evidence of his own or for impeachment, he was free to do so. The existence of a tape recording, however, in no way operates to exclude the direct testimony of Agent Scanlon.

V.
Quinn's final assignment of error is that the verdict is contrary to the overwhelming weight of the evidence and evinces bias, passion and prejudice on the part of the jury. Here Quinn in effect assigns as error the trial judge's refusal to grant his post-trial motion for a new trial.
A motion for a new trial following a jury's verdict is addressed to the sound discretion of the trial court. Burge v. State, 472 So.2d 392, 396 (Miss. 1985); Neal v. State, 451 So.2d 743, 760 (Miss. 1984). When he moves for a new trial, a defendant in a criminal case necessarily invokes Rule 5.16 of our Uniform Criminal Rules of Circuit Court Practice which in pertinent part provides:
The court on written notice of the defendant may grant a new trial on any of the following grounds:

*710 (1) if required in the interest of justice;
(2) if the verdict is contrary to law or the weight of the evidence; ...
Under our established case law, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the weight of the evidence. Burge v. State, 472 So.2d 392, 397 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984). We will disturb that determination by the trial judge only when convinced that the trial judge has abused the discretion so vested in him. Here there was presented unequivocal, credible evidence that on November 8, 1983 Quinn sold a green leafy substance to Scanlon for $75.00 and that the substance was marijuana. We hold on this record that the trial judge acted well within his discretion when he denied Quinn's alternative motion for a new trial.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Banks has been found not guilty by a Sunflower County petit jury. The proceedings there are of no relevance here.