PRATHER, Presiding Justice,
for the Court:
I. INTRODUCTION.
This criminal case is appealed from the Circuit Court of Scott County, Mississippi. On June 20, 1991, after a trial by jury, the appellant, Will Reed, Jr., was convicted of selling a controlled substance, namely cocaine. The trial judge sentenced Reed to serve sixteen (16) years in prison and to pay a three thousand dollar ($3,000.00) fine. Following the denial of his motion to set aside the verdict or for a new trial Reed appeals to this Court assigning as error the following:
I. THE COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT THE RIGHT TO PRESENT CORROBORATING EVIDENCE OF HIS DEFENSE AS WELL AS CORROBORATING EVIDENCE OF THE CO-DEFENDANT’S ALIBI.
II. THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING STATE’S WITNESSES TO TESTIFY TO OTHER CRIMINAL CHARGES FOR WHICH DEFENDANT HAD NOT BEEN CONVICTED AND WHICH *195 WERE NOT CHARGED IN THE INDICTMENT.
III. THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING A STATE’S WITNESS, OVER APPELLANT’S OBJECTION, TO GIVE PREJ-UDICIALLY INFLAMMATORY AND IRRELEVANT TESTIMONY.
IV. THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE DISTRICT ATTORNEY TO SYSTEMATICALLY EXCLUDE BLACKS FROM THE JURY.
V. THE COURT COMMITTED REVERSIBLE ERROR IN NOT ALLOWING SUR-REBUTTAL.
VI. THE COURT COMMITTED REVERSIBLE ERROR IN NOT ALLOWING APPELLANT TO CALL JURORS ON HIS MOTION FOR A NEW TRIAL.
VII. THE EVIDENCE ADDUCED AT APPELLANT’S TRIAL WAS, AS A MATTER OF LAW, INSUFFICIENT TO SUSTAIN A CONVICTION, AND THE VERDICT WAS CONTRARY TO THE LAW AND EVIDENCE.
VIII. THE COURT COMMITTED REVERSIBLE ERROR IN DENYING JURY INSTRUCTIONS REQUESTED BY APPELLANT.
IX. THE VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE AND, IN THE ALTERNATIVE, TO PREVENT A MISCARRIAGE OF JUSTICE, APPELLANT SHOULD BE GRANTED A NEW TRIAL.
II. STATEMENT OF THE FACTS.
In the February 1990 term, the Seott County Grand Jury returned an indictment stating that Will Reed, Jr., and his brother, Anthony Reed, during December of 1989, “did willfully, unlawfully, feloniously and knowingly sell and deliver to L.J. Pace for the sum of Fifty Dollars ($50.00), a Schedule II controlled substance, namely cocaine, in Seott County, Mississippi, contrary to and in violation of Section 41-29-139(a)(l), Miss. Code Ann. (1972).”
On Wednesday, June 19, 1991, the day before trial, the defendant filed a motion of severance to separate his case from that of his brother, Anthony Reed. A hearing on this motion was held that same day. In this motion he argued that he and Anthony Reed had separate and distinct defenses and to try the two together might cause the jury to become confused and thereby prejudice both defendants. The trial judge sustained Will Reed’s severance motion and set Will Reed’s case for trial the next day.
The State presented evidence that on the evening of Wednesday, December 13, 1989, members of the Mississippi Bureau of Narcotics were in Scott County, Mississippi, conducting an undercover operation. One of the purposes of this operation was to attempt an undercover purchase of cocaine from Will Reed, Jr. Four persons were essentially responsible for this task. They were: Leonard Harrison and Glenn Knight, agents with the Mississippi Bureau of Narcotics; L.J. Pace, a police officer with the City of Philadelphia, Mississippi, who was assisting the Mississippi Bureau of Narcotics; and Danny Hicks, an informant working for the Mississippi Bureau of Narcotics. At approximately 7:50 p.m., Pace met with Harrison, Knight, and Hicks. Hicks’ job was to be the informant and set up the introduction of Pace to Reed. Harrison and Knight were to provide surveillance.
After this meeting, Pace and Hicks left and went to Will Reed’s trailer in Forrest. They arrived at Reed’s trailer at 9:38 p.m. Pace and Hicks entered Reed’s trailer. Pace met Will Reed, his brother Anthony Reed and a third black male whom he did not know. Pace testified that Will Reed was standing over the stove “cooking crack cocaine.” Pace said Anthony Reed was sitting at the table with a spoon taking a white powdery substance out of a plastic bag and the third person was standing .beside the stove with an aluminum foil pan in his hand which contained a white crystal type substance. After entering the trailer, Pace told Will Reed that he wanted “fifty dollars worth.” Pace said at this point, Will Reed took three (3) small rocks and passed them to the other man standing next to the stove. *196 That person then gave them to Anthony Reed who was sitting at the table. Anthony Reed rolled them up in a piece of brown paper and gave them to Pace. Pace then gave Will Reed fifty dollars ($50.00). During this transaction, Hicks was sitting in the living room of Will Reed’s trailer. Therefore, he did not see what transpired between Pace and Will Reed. Hicks had been instructed by the Mississippi Bureau of Narcotics to remove himself from the transaction after the negotiation began for his personal safety.
. After this transaction, Pace and Hicks left Will Reed’s trailer and met again with Harrison and Knight. Pace turned the package of cocaine over to Agent Harrison. During this meeting, the group decided to attempt another buy from Will Reed that night. Hicks then drove Pace back to Will Reed’s trailer. The two (2) arrived back at Will Reed’s trailer at 10:14 p.m. Pace went into the trailer by himself on this occasion. The only people that Pace said he saw in the trailer the second time was Will Reed and Anthony Reed. Pace told Will Reed that he wanted a hundred dollars ($100.00) worth of cocaine. Pace then gave Will Reed one hundred dollars ($100.00) in exchange for the cocaine. After this purchase, Pace and Hicks again met with Agents Harrison and Knight. Pace then turned this package of cocaine over to Agent Harrison.
At the close of the State’s ease in chief, Will Reed made a motion for a directed verdict on the ground that the State’s evidence failed to make out a prima facie case against him. This motion was overruled by the trial judge. Following this motion, the Defense began its case. Will Reed’s main defense was an alibi defense whereby he tried to convince the jury that he was not at his home on the evening in question, but rather was at deer camp on a hunting trip. He produced several witnesses to support his proposition. Two members of Will Reed’s hunting party testified that they remembered this particular hunting trip because it occurred during the week of “doe day.”
In response to the testimony of these witnesses, the State, on rebuttal, offered into evidence Public Notice No. 2914 of the Mississippi Department of Wildlife Conservation, Bureau of Fisheries and Wildlife which set forth the days for the anterless deer season (doe days) for the 1989-90 hunting season. This notice revealed that doe days for the area including Scott County were December 22 and 23, 1989.
Will Reed’s wife, Rosa Reed, also testified. She testified that during the week of December 13, 1989, Will Reed was hunting. She said that he left on Sunday and she did not see him again until Thursday. Rosa Reed stated that she spent the night of Wednesday, December 13,1989 at home, and she did not leave at anytime that night. Finally, she testified that she did not see her husband, Will Reed, Jr., or his brother, Anthony Reed, at any point in time that night.
Will Reed, Jr. took that stand in his own defense. Will Reed testified that he killed a deer on Thursday, December 14, 1989. Will Reed said that he had been hunting at Sherman Hill since the previous Sunday with Avery Battle and Mickey Mapp. Each night on this hunting trip, the group stayed at the deer camp. Will Reed also said that on Wednesday night, December 13, 1989, he spent the night at the deer camp and did not leave at all that night. Finally, Will Reed testified on cross examination that he did not sell L.J. Pace any cocaine on the night of December 13, 1989, and that in regard to selling cocaine he said on cross examination, “I never have and never will.”
Also, as part of his defense, Will Reed introduced evidence tending to prove an alibi or the whereabouts of his brother, Anthony Reed on the night of December 13, 1989. Ernestine Reed, Will Reed, Jr.’s mother, testified that her father, Ezra White, had suffered a stroke and as a result she had to take him to Jackson for physical therapy quite a bit. Ernestine could not lift her father so Anthony Reed went with her each time to help her with her father. On Thursday, December 14, 1989, Ernestine Reed had to take her father to Jackson for physical therapy. Therefore, on the evening of Wednesday, December 13,1989, she and Anthony went to her aunt’s house in Morton where her father was living in order to take her father to Jackson the next morning. They arrived in *197 Morton around 7:00 p.m. that night. Ernestine stated that they stayed in Morton that whole night and that Anthony did not leave at any point during the night. This testimony was corroborated by Ezra White, Isreal Reed, and Will Reed Sr.
In the State’s case on rebuttal, the prosecution, in response to Will Reed’s-statement that he never has and never would sell cocaine, introduced the testimony of Douglas Nichols, an informant for the Mississippi Bureau of Narcotics. Nichols testified that on August 15, 1990, he purchased fifty dollars ($50.00) worth of cocaine from Will Reed at his trailer. This testimony was corroborated by that of Agent Faron Gardner of the Mississippi Bureau of Narcotics. Following the State’s witnesses in rebuttal, Will Reed requested surrebuttal, but permission was refused by the court.
After closing arguments by counsel, the jury retired to consider its verdict. The jury returned its verdict finding Will Reed, Jr. “guilty as charged.” The trial judge sentenced Will Reed to serve sixteen (16) years in the custody of the Mississippi Department of Corrections and to pay a three thousand dollar ($3,000.00) fine.
The next day, Friday, June 21, 1991, Will Reed filed a motion to set aside the verdict or for new trial. The trial judge then overruled this motion. Following the denial of his post-trial motion, Will Reed filed his notice of appeal to this Court on June 27, 1991.
III. ANALYSIS.
This Court finds that eight (8) of the nine (9) assignments of error presented by Will Reed Jr. on this appeal are without merit and this case is therefore affirmed on those issues. Only one issue presented is with merit and will be addressed.
THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING STATE’S WITNESSES TO TESTIFY TO OTHER CRIMINAL CHARGES FOR WHICH DEFENDANT HAD NOT BEEN CONVICTED AND WHICH WERE NOT CHARGED IN THE INDICTMENT.
One line of testimony the introduction of which Will Reed contends is error involves the testimony relating to a sale of cocaine by Will Reed to Douglas Nichols, an informant for the Mississippi Bureau of Narcotics, on August 15, 1990, some eight (8) months after the sale for which Will Reed was arrested and tried. This evidence was introduced in the State’s case in rebuttal and was offered to rebut a certain statement made by Will Reed on cross-examination that he had never sold cocaine.
“Where an accused, on direct examination, seeks to exculpate himself, such testimony is subject to normal impeachment via cross-examination, and this is so though it would bring out that the accused may have committed another crime.” Stewart v. State, 596 So.2d 851, 853 (Miss.1992). This type of impeachment applies when, on direct examination, the defendant makes blanket statements which open the door for impeachment. Quinn v. State, 479 So.2d 706, 708-09 (Miss. 1985). However, these cases are distinguishable from the case at bar in that in the instant case the statements the State sought to impeach were elicited by the prosecution during the cross-examination of Will Reed, Jr. The statement sought to be impeached was elicited in the following colloquy of Will Reed Jr.’s cross-examination.
Q. And are you telling this Court specifically on December 13, 1989, that you did not sell cocaine to L.J. Pace?
A. I did not.
Q. You are just telling us that you don’t do that kind of thing?
A. No, I don’t do that.
Q. Never have and never would?
A. Never will.
Q. Never have and never will?
A. I never have and never will.
The prosecutor was purposely trying to derive these statements from Will Reed that he has never sold cocaine to anyone. The State tried to impeach this statement by introducing the testimony of Douglas Nichols in its case in rebuttal. In his testimony, Nichols stated that he bought fifty dollars ($50.00) worth of cocaine from Will Reed approximately eight (8) months after the sale to L.J. Pace. This testimony was corroborated by Agent Faron Gardner of the Mississippi Bu *198 reau of Narcotics. The Defense objected to this line of testimony and asked for a continuing objection. In response to Will Reed’s objection to Nichols’ testimony concerning the sale of cocaine the trial judge stated:
He [Will Reed, Jr.] testified he never did and never would, never will. I think that’s proper Rebuttal so far as it has gone now. I don’t see any sense in going into any details, and I will sustain the objection as to any details, but I think he has answered your question.
The trial judge refused surrebuttal to refute this new subject matter.
In Tobias v. State, 472 So.2d 398, 400 (Miss.1985), this Court held that the State’s impeachment effort was impermissible and reversed where the State attempted to impeach a statement made by the defendant that was elicited by the State on cross examination of the defendant. See also Spraggins v. State, 606 So.2d 592, 597 (Miss.1992). In Tobias, the defendant was charged with uttering a forgery on a check written on October 24, 1982. Tobias, 472 So.2d at 398. On cross examination of the defendant, the prosecutor asked the defendant specifically if he had written any checks to a convenience store on the previous day, October 23. The defendant answered that he had not. Id. at 400. On rebuttal, the prosecution presented the testimony of a convenience store clerk. This clerk identified a counter check which was later returned unpaid that she cashed on October 23 and she also identified the defendant as the person who cashed the check. Id. Again, the Court held that the prosecution’s attempt to impeach a statement that it had elicited from the defendant on cross examination with this type of rebuttal evidence was not proper and reversed and remanded the case for a new trial. Id.
The facts of the ease at bar are similar to those in Tobias. In the instant case, the State elicited testimony from Will Reed on cross examination and then tried to impeach this testimony on rebuttal by presenting evidence of conduct which had not resulted in a conviction. Impeachment of Reed’s statement that he had never sold cocaine and would never sell cocaine was improper impeachment by the State. The State initiated the matter deriving from Reed the statement that it later attempted to impeach by testimony of other criminal, but unconvicted, acts allegedly committed by Reed. The details of the allegations were testified to by two of the State’s witnesses. No surrebuttal was allowed by the court to refute the new eviden-tiary matter.[1] This evidence was not properly admissible and as such the trial court erred in admitting it. Reed presents a meritorious claim as to this line of testimony. Therefore, this Court reverses this conviction and remands for a new trial as a result of the evidence that Reed made another sale of cocaine which was improperly admitted and without the opportunity for surrebuttal.
In addition, this Court should mention that Will Reed also complains about the admission of L.J. Pace’s testimony, over his objection, that subsequent to the first purchase of cocaine he returned to Will Reed’s trailer that same night and made a second cocaine purchase. In the instant case the first cocaine transaction, the one for which Will Reed was indicted and tried in this case, began at 9:38 p.m. and the second cocaine purchase took place at 10:14 p.m., a time span of only thirty-six (36) minutes. Also, the principle agents in the two transactions were identical, Will Reed Jr. being the seller and L.J. Pace being the purchaser. In light of the fact that this Court has already concluded that a reversal and remand for new trial is mandated in the instant case, we do not reach the question of whether this was evidence of one crime or two. However, prosecutors in our state are admonished to remember that when they chose to present this type of evidence, they run the very real risk of a reversal upon appeal.
Finally, this Court has carefully reviewed and considered all of the other assignments of error presented by Will Reed, Jr. on this appeal. After such review, this Court holds *199 that all other assignments of error are without merit and warrant no further discussion.
IV. FINAL ANALYSIS AND CONCLUSION.
This Court finds that eight (8) of the nine (9) assignments of error presented by Will Reed Jr. on this appeal are without merit. However, Will Reed’s assignment of error concerning the introduction of evidence regarding a subsequent sale of cocaine on August 15, 1990 presents a meritorious claim. This Court holds that this evidence was improperly admitted. Since this evidence is regarding the same activity for which Will Reed was arrested and tried, the selling of cocaine, this Court concludes that Will Reed was prejudiced by the introduction of this evidence. Therefore, this Court holds that this case should be reversed and remanded to the Circuit Court of Scott County for a new trial.
JUDGMENT IS REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur. McRAE, J., dissents with separate written opinion joined by JAMES L. ROBERTS, Jr., J.

. See Culberson v. State, 405 So.2d 126, 128 (Miss.1981) (quoting Nicholson v. State, 243 So.2d 552, 555 (Miss.1971)) ("The rule is well settled in this state that where rebuttal evidence is introduced, surrebuttal should be allowed, particularly where to fail to do so would be prejudicial”).