KING, J.,
for the Court:
II1. Slaughter was indicted for murder and convicted of manslaughter in the Pike County Circuit Court in May of 1996. He appeals asserting four separate issues. We find that only the fourth issue has merit, i.e., whether the trial court erred in overruling the defense’s objection to rebuttal testimony going to whether Slaughter had previously displayed a pistol when he argued with another individual, and whether the State should have revealed the identity of this individual during discovery. Upon this issue we reverse and remand this case for further adjudication consistent with this opinion.
FACTS
¶ 2. Slaughter shot and killed his wife’s former husband, Alex Lambert. Slaughter claimed self-defense. Lambert had a long history of antagonism towards Slaughter, and Lambert also had a history of abusing his ex-wife, Sissy Slaughter. Slaughter and Lambert got into a fist fight in a convenience store parking lot, where Lambert got the better of Slaughter. Slaughter testified that he thought the fight was over and walked back to his truck, but saw Lambert following him with a knife in his hand. Slaughter stated he pulled his nine millimeter pistol from his truck and fired twice, whereupon Lambert briefly ducked behind an ice machine. Lambert quickly jumped out again, which frightened Slaughter, so he fired twice more. Apparently Lambert was turning around as Slaughter fired because the fatal shot hit him in the back and passed through his heart. Some witnesses corroborated Slaughter’s claim that Lambert followed him to his truck and brandished a knife, but others testified that the fight was over, and Lambert was walking away when Slaughter fired.
DISCUSSION
¶ 3. In his opening statement, Slaughter’s attorney stated, “ [Slaughter] carried a pistol in his truck, in his Lott Furniture truck, for a long time. Never used, never pulled it, never had any reason before. So he did have a gun in his truck all the time.” No other mention of Slaughter’s prior use of a pistol was made during the trial, until the State cross-examined Slaughter. That is, during Slaughter’s direct examination, his attorney asked no questions as to whether Slaughter had pointed a pistol at another individual.
¶ 4. However, apparently sometime after opening statements, but during the trial’s first day Lee Felder told the prosecuting attorney that Slaughter had pointed a pistol at him approximately one and a half years before the trial. Consequently, during cross-examination the following exchange occurred between the State and Slaughter.
Q: Your attorney in his opening statement, you heard what he said didn’t you?
A: I don’t recall what he said.
BY MR. OTT: I’m going to object to any cross-examination about anything in *1094 opening statements. I don’t think that is proper at all.
BY THE COURT: I haven’t heard the question yet. I’ll reserve ruling.
BY MR. OTT: Whatever it is.
Q: Your attorney said on opening statement that you never pulled a gun on anyone.
A: I have not ever pulled a gun on anyone.
¶ 5. Subsequently, Felder was called as a rebuttal witness for the State. Slaughter’s attorney again objected, contending there had been a discovery violation because the State had not disclosed Felder as a witness in its discovery response. The State argued that Felder’s name was not disclosed during discovery both because Felder’s knowledge of this issue was not known by the State until after the defense made its opening statement, and because Uniform Circuit and County Court Rule 9.04(1) only requires disclosure of “witnesses in chief.”
¶ 6. The trial court ruled there was no discovery violation and that “the credibility of a witness is always at issue when he takes the witness stand.” Thereafter, Felder testified:
Q: Let me ask you on what occasions, if any, the defendant Joe Slaughter pulled a weapon on you or exhibited a weapon in your presence and threatened you.
A: About a year of so back — You want me to tell—
Q: Yes, sir—
A: —the incident?
Q: Yes, sir.
A: I had a little run-in with him on a street corner. And a couple of hours later he showed up down on our lot where I was unloading my truck. And we had words. And I asked him to leave, that I was fixing to call the police. And he went out to his truck and brought out a, to me it appeared to be a semi-automatic weapon, like a nine millimeter or a forty-five, something like what these police officers use. And I continued to go towards him and he got in his, he went ahead and got back in his truck and left. I was going to call the law because, because of this situation.
Q: Where did the weapon come from?
A: He was, he was in, he had a, he was in a Lott’s Furniture truck. He went around his truck and got it out of his truck. It was in his truck.
1. DISCOVERY VIOLATION
¶ 7. There is no reason to doubt the prosecution’s contention that Felder’s testimony was unknown prior to trial. Felder was scheduled to drive a bus to transport the jury, which accounted for his attending the trial, and the relevancy of his knowledge as to whether Slaughter had previously displayed a pistol could not have been known until after opening argument. Further, Uniform Circuit and County Court Rule 9.04(1) only requires the disclosure of rebuttal witnesses if their testimony could have been offered during the State’s case-in-chief.
¶ 8. However, the supreme court has made an addition to the above rule in sometimes requiring rebuttal witnesses be listed in discovery. In Nicholson v. State, 704 So.2d 81, 88 (Miss.1997), the supreme court held that it was error to allow a rebuttal witness to testify when that witness’s identity was known before trial, and the substance of the testimony could have been introduced in the State’s case-in-chief. See also Hosford v. State, 525 So.2d 789, 792 (Miss.1988)(holding the State must introduce all evidence going to guilt or innocence in its case-in-chief). These cases establish that the State cannot circumvent discovery by introducing evidence “through the back door” during rebuttal rather than presenting all relevant evidence going to the elements of a crime during its case-in chief. Id However, Nicholson does not apply here because the rebuttal testimony was both unknown until trial and; as discussed below, should not have gone to proving any element of the *1095 crime. Therefore, the issue of a discovery violation is without merit.
Rebuttal Testimony
¶ 9. M.R.E. 613(b) provides that extrinsic evidence of a prior inconsistent statement is admissible if the witness is offered an opportunity to explain or deny the prior statement. However, Quinn v. State, 479 So.2d 706, 708 (Miss.1985) and its progeny hold that the State may inquire into past acts only if the defense first opens the issue to paint the defendant in an innocent light.[1] That is to say, the State may not elicit the statement to be rebutted during cross-examination; rather, the defense must first “open the door” during direct examination. Spraggins, 606 So.2d at 597. In this case, the only “door opening” that occurred was Slaughter’s attorney’s opening statement. Thus, at first glance, it may appear that this case runs afoul of Quinn.
¶ 10. However, in closing argument the State may comment upon the defense’s opening statement. See, e.g., Taylor v. State, 672 So.2d 1246, 1269 (Miss.1996). The State in its brief correctly points out if a defense attorney mistates a fact during opening argument, a jury may be left with a misunderstanding of the fact unless the State is afforded the opportunity to rebut. Moreover, in this case, there was no practical way for the State to counter the defense’s contention that Slaughter had never drawn a weapon from his truck in anger unless it produced evidence he did so.
¶ 11. Further complicating the State’s predicament, M.R.E. 608(b) prohibits showing a prior bad act through extrinsic evidence but provides the prior act may be inquired into through cross-examination.[2] Therefore, the only way for the State to rebut Slaughter’s attorney’s statement was to put forth evidence tending to show it was false, and the only means available to it for putting forth this evidence was to question Slaughter during cross-examination as to whether his attorney had correctly stated the facts. This Court is mindful of the trend of supreme court cases closely limiting the scope of the State’s impeachment of defendants. Nevertheless, keeping in mind the need for the jury to be fully informed, we do not find error in the trial court’s decision to either allow the State to cross-examine Slaughter as to whether he had employed a pistol previously, or allow the state to impeach Slaughter though Felder’s testimony.
¶ 12. In so holding, however, this Court, must keep in mind the possible prejudice to a defendant that can arise through impeachment. The supreme court has held that rebuttal questioning of a witness who impeaches a defendant’s statement may not go into the details of the act surrounding the rebuttal. Stewart, 596 So.2d at 853. That is, the scope of cross-examination “may not exceed the invitation offered.” Id. See also Spraggins 606 So.2d at 597; Blanks v. State, 547 So.2d 29, 37 (Miss.1989).
¶ 13. The specific facts of this case present a difficult decision. The specific statement that Slaughter’s attorney made during opening argument was so closely tied to the facts of the case that it was difficult for the State to formulate a question for Felder that did not go into specific details of the prior act. Slaughter’s attorney stated, “[h]e’s [Slaughter] carried a pistol in his truck, in his Lott Furniture truck, for a long time. Never used, never pulled it, never had any reason before. So he did have a gun in his truck all the time.” However, the real issue that the State should be permitted to inquire into was not Slaughter’s predilection to act in conformity with the prior act, but Slaughter’s attor *1096 ney’s candor towards the jury. The trial court could have limited the State to simply eliciting a statement from Felder that he had seen Slaughter draw a pistol from his truck in anger. There was no reason for the jury to hear the Felder and Slaughter had been arguing, or that even though Felder and Slaughter had ceased arguing Slaughter still drew the pistol, or that the pistol closely resembled the weapon used to kill Lambert. It is impossible to see how the .jury could not have been prejudiced when it heard Felder say:
A: I had a little run-in with him on a street corner. And a couple of hours later he showed up down on our lot where I was unloading my truck. And we had words. And I asked him to leave, that I was fixing to call the police. And he went out to his truck and brought out a, to me it appeared to be a semi-automatic weapon, like a nine millimeter or a forty-five, something like what these police officers use. And I continued to go towards him and he got in his, he went ahead and got back in his truck and left. I was going to call the law because, because of this situation.
Q: Where did the weapon cojne from?
A: He was, he was in, he had a, he was in a Lott’s Furniture truck. He went around his truck and got it out of his truck. It was in his truck.
This detail is exactly what the supreme court has prohibited. See, e.g., Spraggins, 606 So.2d at 597.
¶ 14. Therefore, we hold the trial court should have limited the State’s questioning of Felder to simply eliciting enough so that the State could in closing argument refer to Slaughter’s opening argument and say words to the effect, “you were told Slaughter never drew a weapon in anger from his truck, but that was not true.” As such, this holding is fact specific. It should not apply in many cases because defense attorneys certainly do their clients no favors if they allow the State to paint them as having dubious credibility for the jury.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS REVERSED AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS. COSTS OF APPEAL ARE ASSESSED TO PIKE COUNTY.
BRIDGES, DIAZ, LEE, PAYNE, AND THOMAS, JJ, CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., AND IRVING, J. MOORE, J., NOT PARTICIPATING.

. See, e.g., Blackman v. State, 659 So.2d 583, 583-84 (Miss.1995); Spraggins v. State, 606 So.2d 592, 595-97 (Miss.1992); Stewart v. State, 596 So.2d 851, 853-54 (Miss.1992).

. See also Lewis v. State, 580 So.2d 1279, 1287 (Miss.1991); Pinson v. State, 518 So.2d 1220, 1223 (Miss.1988).