569 So.2d 1206 (1990)
Frank Lamar HUDGINS
v.
STATE of Mississippi.
No. 89-KA-0664.
Supreme Court of Mississippi.
October 24, 1990.
Julie Ann Epps, Rienzi and W.S. Moore, Jackson, for appellant.
Mike C. Moore, Atty. Gen. and Charles W. Maris, Jr., Sp. Asst Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
Appellant Frank Hudgins was convicted for the manufacture of marihuana in the Circuit Court of Carroll County, Second Judicial District, and sentenced to fifteen *1207 (15) years in the custody of the Mississippi Department of Corrections.
Hudgins appeals, assigning as error:
I. WHETHER APPELLANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION OF "OTHER OFFENSE" EVIDENCE WITHOUT A CAUTIONARY INSTRUCTION TO THE JURY?
II. APPELLANT'S CONVICTION MUST BE REVERSED BECAUSE THE CUMULATIVE PREJUDICIAL IMPACT OF THE INTERJECTION OF EXTRANEOUS INFLAMMATORY MATTERS DEPRIVED HIM OF DUE PROCESS OF LAW AND HIS RIGHT TO A FAIR TRIAL UNDER BOTH THE STATE AND FEDERAL CONSTITUTIONS.
In March of 1988, Richard Lehman, a landowner in Carroll County, observed a vehicle parked at the boundary of his rural property. Curious as to the whereabouts of the car's occupants, Mr. Lehman "kept an eye" on the vehicle as he worked on his adjacent tract of land. Around noon, Mr. Lehman noticed two men walking toward the parked automobile; one of the men, identified as Cornell Clark, was carrying a hoe; the other man, later identified as Frank Hudgins, possessed a handgun on his belt. Anxious to find out why these men were on his land, Mr. Lehman approached the men and inquired about their activities. According to Lehman, the men related that they were scouting the area for signs of turkeys because they were looking for a place to hunt. Mr. Lehman told the men that his land was posted against hunting and with that the men got into their vehicle and left.
Richard Lehman, not "feel[ing] good about the situation," went home for dinner and phoned Deputy Sheriff R.W. Miller. He explained the events of the morning to Deputy Miller and Miller agreed to come out to his place to look around. Upon arrival, Miller and Lehman went out to the rural property and walked in the direction that Clark and Hudgins had travelled. In a secluded area on Lehman's land, they discovered several patches where it appeared that marihuana was being grown.
Based on these findings, Deputy Miller returned to the patches periodically to check on the contents therein and in hopes of finding someone there caring for the plants. When the plants had reached a size suitable for harvest, Deputy Miller contacted the North Mississippi Narcotics Task force. On June 1, 1988, surveillance of the patches was begun as a joint effort between the task force and the local sheriff's office. On the morning of June 3, Deputy Miller had left his post at the marihuana patch when he saw Cornell Clark and Frank Hudgins heading in the direction of the patches. The two men were approximately one-eighth to one-fourth of a mile from the patches on a path that led from Clark's house to the Lehman property. Because Deputy Miller had been taken by surprise, he was not able to observe exactly where Clark and Hudgins were headed. As a result, he arrested the men while still some distance from the marihuana patches. Hudgins had a .44 caliber pistol in his possession.
Upon being arrested, Cornell Clark was interrogated in the courthouse in Vaiden, Mississippi. From this interrogation, Sheriff Whitfield and his deputies returned to the scene and seized the marihuana plants and also a whiskey still located on Clark's property. Later in the day, Cornell Clark was interrogated again; this time he gave a statement implicating Frank Hudgins in the growing of the marihuana in the patches.
At the trial of Frank Hudgins, Cornell Clark was called as a witness concerning his dealings with appellant. Over defense objection, Cornell Clark informed the jury that he and Hudgins had once before tried to grow marihuana, but that they had been unsuccessful in that attempt. Clark further informed the jury that Frank Hudgins, in the instant case, instigated the idea of growing marihuana. This testimony was followed by an explanation of Clark and Hudgins' activities in March of 1988. According to Clark, when the two men were observed by Richard Lehman, they had been to cultivate the marihuana patch.
*1208 After the State rested its case, Frank Hudgins took the stand in his own behalf. Hudgins testified that he was a forty-two (42) year old river boat engineer and that he was a life-long resident of Attala County. As to his dealings with Cornell Clark, Hudgins testified that he had met Clark a few years before and that he hunted and trapped on Clark's land. He stated that on the day that Richard Lehman had seen them in March, that he and Clark had gone out to check for turkey signs. He explained that Clark was carrying a hoe because he was "deathly afraid of snakes" and that he was carrying a .44 caliber pistol because of the coyotes and snakes in the area.
On June 3, 1988, Hudgins stated that he went to Clark's place to purchase moonshine whiskey from Clark's still as he had done in the past. (This fact is disputed by Clark although a still was found on the property that day). Hudgins testified that Clark told him that he had stopped keeping the whiskey at his house because people had been talking about it too much. According to Hudgins, Clark told him that the whiskey was hidden out near the fence row and that they would have to walk out there to get it. It was on this journey that the men ran into Deputy Miller and were arrested. Hudgins testified that he told Deputy Miller that they were out searching for muscadines or elderberries because he did not want to get Clark in trouble for selling moonshine. At trial, Hudgins denied having any knowledge of any marihuana being grown in the area.

I.

WHETHER APPELLANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION OF "OTHER OFFENSE" EVIDENCE WITHOUT A CAUTIONARY INSTRUCTION TO THE JURY?
At the trial of Appellant Frank Hudgins, Cornell Clark was called to testify concerning the various activities that he and Frank Hudgins had undertaken in the past. During this testimony, however, the following exchange took place between the prosecuting attorney and Cornell Clark:
Q. Whose idea was it to plant the marihuana?
A. Frank.
Q. You said that you first met him three years ago. When did he first discuss planting marihuana?
A. The first year I seen him. Second year after I met him.
Q. I beg your pardon?
A. I believe the first or second year after meeting him.
Q. All right. Was marihuana, in fact, planted?
A. We tried it but it didn't work.
Q. Where did you try to plant it?
A. That was on the place, first time.
Q. Whose place?
A. My daddy's.
Q. All right, where did 
BY MR. MOORE: Your Honor, we're going to object to this. This is a surprise. We're not prepared for any sort of farming activities on his place, three years before this.
BY THE COURT: The objection is overruled.
BY MR. SNYDER: (To the witness)
Q. All right, after this did you try to plant some on Mr. Lehman's place?
Appellant maintains that the admission of the above "other offense" testimony without a limiting instruction to the jury constituted reversible error. Although not raised as a direct issue, this alleged erroneous admission of evidence invokes Rule 103 of the Mississippi Rules of Evidence. Rule 103 provides in pertinent part:
(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if *1209 the specific ground was not apparent from the context; ...
Miss.R.Evid. 103(a)(1).
Under Rule 103, an admission of improper evidence will lead to reversal only when: 1) it affects a substantial right of the party, and 2) when an objection to the evidence appears on the record. Considering these two factors, this Court has held that the receipt of improper evidence by the trial court is reversible error when it affects a defendant's right to a fair trial. See Hall v. State, 539 So.2d 1338 (Miss. 1989); Darby v. State, 538 So.2d 1168 (Miss. 1989). Under this proposition, this Court would show that when faced with the objection to improper evidence, the trial judge had two choices. First, he could have sustained the objection and admonished the jury accordingly, or next, he could have allowed the evidence and given a specific cautionary instruction to the jury at trial's end. The lower Court did neither. Consequently, Appellant was prejudiced by the introduction of the "other offense" testimony which resulted in the denial of a fair trial. See Tobias v. State, 472 So.2d 398 (Miss. 1985). On these findings, the lower court must be reversed.
Appellant's first assignment of error has merit. Because reversal is required on this ground, appellant's second assignment of error is moot. This Court does, however, note that the opinions given by Deputy R.W. Miller in the initial trial were improper. As such, this Court is in hope that Deputy Miller will restrain his testimony to the facts in the future proceedings.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.