James Spraggins, the defendant, lived in Batesville, Mississippi, in a house which he shared with Sterling Gates and Beverly Fondren. Sterling Gates acted as a confidential informant in this case and allegedly bought two rocks of crack cocaine for $30.00 from his friend and housemate, Spraggins, on August 11, 1989.
Spraggins was indicted for sale of a controlled substance, cocaine, by a Panola County Grand Jury in the February 1990 term. A trial was held on October 16-17, 1990, and a jury found Spraggins guilty. The Panola County Circuit Court, Second Judicial District, sentenced Spraggins to fifteen (15) years to the custody of the Mississippi Department of Corrections, with the last three (3) years suspended pending future good behavior. Spraggins was also fined $2000.00 and ordered to make restitution in the amount of $100.00 to the Mississippi Crime Lab and $30.00 to the Panola County Sheriff's Office. Post trial motions for JNOV and New Trial were denied.
Now, Spraggins appeals his conviction and sentence to this Court with two assignments of error.
 I. THE CIRCUIT COURT JUDGE ERRED IN PERMITTING THE ASSISTANT DISTRICT ATTORNEY TO QUESTION THE APPELLANT CONCERNING THE APPELLANT'S UNCONVICTED AND CONVICTED PRIOR CONDUCT.
 II. THE CIRCUIT COURT ERRED IN DENYING THE DEFENDANT'S BATSON V. KENTUCKY CHALLENGE.
After a review of this case, we find that Spraggins' first assignment of error presents substantial merit warranting reversal of his conviction. Consequently, we reverse the conviction, vacate the sentence, and remand to the Panola County Circuit Court, Second Judicial District, for a new trial. Since appellant's first assignment of error is dispositive, we decline to address the second assigned error regarding the allegedBatson violation.
 FACTS
At the trial, the confidential informant, Sterling Gates, provided the "convicting" testimony. Gates testified that he agreed to work as a confidential informer at the insistence of Bill Drake, his employer. Gates testified that he stole two pistols and some welding equipment from Bill Drake, but Drake agreed to forget the matter if Gates would help law enforcement officers *Page 593 
in Panola County in the battle on drugs. As noted above, Gates and Spraggins shared a house along with Beverly Fondren, who was Spraggins' girlfriend.
The drug buy that Gates described at trial was routine and unremarkable in every sense. Gates met with Mississippi Bureau of Narcotics Agent Rod Waller and Panola County Sheriff David Bryan. Gates was thoroughly searched, and a transmitter was taped to his chest. He was provided with $60.00 from the Panola County's Sheriff's Office for the buy. Gates got on his bicycle and proceeded to the house that he shared with the defendant and Fondren while Sheriff Bryan and Agent Waller set up surveillance in an unmarked car. Gates entered the house and found Spraggins in the back bedroom. Once there, Gates and Spraggins haggled over price for some crack cocaine. After a little negotiating, Gates allegedly bought two rocks of crack cocaine for $30.00. Gates returned to Sheriff Bryan and Agent Waller where he was searched again. He then turned over the remaining $30.00 and the two rocks that he supposedly bought from Spraggins.
Spraggins took the stand in his own defense. He categorically denied selling crack to Gates on August 11, 1989. According to Spraggins, Gates came by the house on the day in question, and the two of them engaged in a discussion about selling Gates' bicycle. Spraggins testified that Gates needed money and initially tried to sell his bike for $65.00. According to Spraggins, he bought Gates' bicycle for $20.00, and then Gates left on the bike.
For the state's rebuttal, the prosecution played the tape of the alleged drug buy. Although the tape quality is poor, it appears that the discussion between Gates and Spraggins concerned a purchase of drugs rather than the sale of a bicycle.
 I. THE CIRCUIT COURT JUDGE ERRED IN PERMITTING THE ASSISTANT DISTRICT ATTORNEY TO QUESTION THE APPELLANT CONCERNING THE APPELLANTS UNCONVICTED AND CONVICTED PRIOR CONDUCT.
The admissibility of character evidence is governed by Mississippi Rule of Evidence 404. Rule 404 is set forth in its entirety below:
 RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES
 (a) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
 (1) Character of Accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
 (2) Character of Victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor;
 (3) Character of Witness. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.
 (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
M.R.E. 404.
In addition to Rule 404(b), there exists a plethora of case law which warns that evidence of other wrongs is inadmissible in the trial of an accused to show behavior which conforms with the charge in the indictment. Blanks v. State, 547 So.2d 29 (Miss. 1989); Hunt v. State, 538 So.2d 422 (Miss. 1989); Davis v.State, 530 So.2d 694 (Miss. 1988); Robinson v. State,497 So.2d 440 (Miss. 1986); Brown v. State, 483 So.2d 328 (Miss. 1986); Fisher v. State, 481 So.2d 203 (Miss. 1985); Tobias v.State, *Page 594 472 So.2d 398 (Miss. 1985); Donald v. State, 472 So.2d 370 (Miss. 1985);Gallion v. State, 469 So.2d 1247 (Miss. 1985); Mason v.State, 429 So.2d 569 (Miss. 1983); Tucker v. State,403 So.2d 1274 (Miss. 1981); Allison v. State, 274 So.2d 678 (Miss. 1973).
James Spraggins was on trial for selling two rocks of crack cocaine to Sterling Gates. Despite Rule 404(b)'s clear proscription of character evidence introduced to show conformity and the rule of the common law, the jury heard repeated testimony of Spraggins' prior involvement in drug related crimes and acts which were unconnected and unrelated to the charge in the indictment.
While the assistant district attorney was questioning Spraggins on cross examination, he elicited the following testimony from Spraggins. (1.) On December 10, 1989, some four months after
August of 1989, when Spraggins allegedly sold crack to Gates, Spraggins was indicted for possession of cocaine in Panola County, Mississippi. (2.) On August 24, 1989, only a few daysafter Spraggins allegedly sold crack cocaine to Gates, Spraggins and a friend named James Lewis were arrested in Shelby County, Tennessee, and charged with possession of cocaine with intent to distribute. Spraggins was convicted of possession of 5.8 grams of cocaine on December 27, 1989, stemming from the Tennessee charges.
The following testimony consists of the Assistant D.A.'s questioning of Spraggins concerning the prior arrest in Panola County, Mississippi, and the arrest and conviction in Tennessee.
 BY MR. KELLY:
 Q. Mr. Spraggin, I think we were at the point where we were trying to determine your residence. Now, in 1989 you were living with Beverly Fondren in her home, weren't you?
 A. Yes, sir, part of the time.
 Q. Only part of the time.
 A. Yes, sir.
 Q. And the other part of the time you maintain you were living with your mama.
 A. Yes, sir.
 Q. During the whole period of time you were living with Ms. Fondren she was using cocaine?
 A. Yes, sir.
 Q. And you knew that?
 A. Yes, sir.
 Q. In fact she's been convicted of possession of cocaine, hasn't she?
 A. Yes, sir.
 Q. In fact you were present when she was arrested, weren't you?
 A. Yes, sir.
 Q. In fact you were arrested yourself?
 A. Yes, sir.
 Q. And you're charged with possession of cocaine, aren't you?
 A. Yes, sir.
 Q. Now, when was that? When did that happen?
 A. I think it was October of '89 or November '89. I don't know what the exact date.
 Q. Well, one or two months after the date that you are charged with selling cocaine to Mr. Gates?
 A. I think so. As I say, I don't know the exact month. I'll have to look at the papers again.
 MR. KELLY: May I get the court file?
 (THE ASSISTANT DISTRICT ATTORNEYS GETS THE COURT FILE.)
 Q. Mr. Spraggin, by reference to Circuit Court Criminal Cause No. CR-90-48-C(P2), the indictment indicates that you were charged with possession of cocaine on December 10, 1989; that Beverly Fondren and Henry Patterson were your co-defendants. Do you admit that?
 A. Yes, sir.
 Q. So, December 10th would be four months from August the 11th?
 A. Yes, sir.
 Q. Four months later you are charged with possession of cocaine.
 A. Yes, sir.
 Q. In the same house?
 A. Yes, sir. *Page 595 
 Q. In Ms. Fondren's house where you and she were living?
 A. Yes, sir.
 Q. In the same house that you sold the cocaine to Mr. Gates?
 A. I didn't sell no cocaine to Mr. Gates, it was in the same house.
 Q. Do you remember yesterday when you were sitting at your lawyer's table, Mr. Rod Waller was testifying?
 A. Yes, sir.
 Q. Do you remember Mr. Walker asked Mr. Waller if Mr. Waller had ever seen you, remember that?
 A. Yes, sir.
 Q. What did Mr. Waller say?
 A. He said he saw me in Shelby County?
 Q. Okay, you want to tell us about that?
 A. Well, I don't remember him. He probably remembers me. Well, in Shelby County, well, I and a friend of mine got busted for drugs.
 Q. All right, and that friend is James Lewis.
 A. Yes, sir.
 Q. What date was that?
 A. I believe it was September.
 Q. Would you believe it was August 24, 1989?
 A. It probably was.
 Q. It probably was. Now, what were you charged with there?
 A. Possession of cocaine.
 Q. Now, I asked you what you were charged with not what you were convicted of.
 MR. WALKER: Note an objection, please, Judge.
 THE COURT: You may have a continuing objection, it is overruled.
 Q. (By Mr. Kelly): You were charged with possession of cocaine with intent to distribute, weren't you?
 A. Yes, sir.
 Q. But you plead guilty to the reduced charged of possession of cocaine, didn't you?
 A. Yes, sir.
 Q. And on December 27, 1989, you were convicted of possession of 5.8 grams of cocaine.
 A. In December '89?
 Q. December the 27th, 1989.
 A. No. sir.
 Q. When were you convicted?
 A. September — you talking about the one in Shelby County?
 Q. You were convicted in September?
 A. Yes, sir. If that's the one. I didn't have but one charge.
 Q. All right. What date are you on trial for in this courtroom today?
 A. 10/17/90.
 Q. No, no. What was the day you sold the cocaine to Gates?
 A. August 11, 1989.
 Q. Okay. What is the date that you and James Lewis were arrested in Memphis, Tennessee?
 A. August — you said August the 24th.
 Q. August 24th. How many days is it from August the 11th to August the 24th?
 A. What is that, about two weeks, a week and a half?
 Q. About two weeks. All right. Now, sir. Mr. Gates was living with you and Ms. Fondren.
 A. Yes, sir.
 Q. And he knew where to find you.
 A. Repeat the question.
 Q. He knew where to find you.
 A. Yes, sir, he know where to find me when I got off work.
 Q. Now by reference to Exhibit No. 1, how much crack is that?
 A. I don't know.
 Q. You want to look at it?
 (THE WITNESS LOOKS AT EXHIBIT 1.)
 A. I don't have no idea. *Page 596 
 Q. You don't have any idea. Well, is it more or less than the amount of cocaine you were caught with in Shelby County?
 A. I don't now. What they said I was caught with in Shelby County was a quarter of an ounce of caine. I don't know what that there is.
 Q. What they say you were caught with in Shelby County?
 A. Yes, sir.
 Q. You had nothing to do with it?
 A. I had something to do with it, but I wouldn't know a quarter ounce of cocaine if you brought it up here.
 Q. Well, how much does a quarter of an ounce of caine cost?
 A. I don't know that neither, sir.
 Q. How much does a sixteenth ounce of caine cost?
 A. I don't know that neither.
 Q. How much does an 8-ball cost?
 A. I don't know that.
 Q. You don't know what it cost?
 A. No, sir.
 Q. How much did you pay for it?
 A. Well, I didn't pay nothing for it because I didn't have but $40.00, my partner did.
 Q. Your partner did?
 A. Yes, sir.
 Q. Mr. Lewis?
 A. Yes, sir.
 Q. Well, what were you going to do with it?
 A. I wasn't going to do nothing with it. I reckon he was going to smoke it. I was just holding it for him.
 Q. Oh, you were just holding it?
 A. Yes, sir. But like I said both of us was in the car, I got caught with it, so I got charged with it.
In addition to the above, the Assistant District Attorney attempted to elicit testimony from Spraggins that he kept Fondren's sister, Minnie Bell Perry, supplied with cocaine.
At trial, the state was successful in convincing the circuit court that this Court's decision in Quinn v. State,479 So.2d 706 (Miss. 1985), furnished the rule of law allowing the admissibility of Spraggins' prior conviction and other bad acts. However, a clear reading of Quinn leaves no doubt that the testimony elicited by the state from Spraggins is, in fact,inadmissible — not admissible.
In Quinn v. State, Terry Lee Quinn was on trial for selling 9.8 grams of marijuana on November 8, 1983, to a narcotics undercover agent and a confidential informant. Quinn v. State,479 So.2d 706, 707 (Miss. 1985). Four days prior to November 8th, November 4, 1983, Quinn also allegedly sold marijuana to the same undercover agent. Quinn took the stand in his own defense. While being questioned by his own attorney on direct examination, Quinn categorically denied that he had ever sold marijuana to anyone at anytime:
 Q. Now, Mr. Quinn, I ask you this question, and please answer truthfully: Do you sell marijuana?
 A. No, sir.
 Q. Have you at any time ever sold marijuana to anyone?
 A. No, sir.
Quinn, 479 So.2d at 708.
In response to questions posed by his own attorney, Quinn purposely portrayed himself as "pure as the driven snow." "To be sure, every defendant brought to trial may, if he wishes, try to paint himself as being as pure as the driven snow." Quinn v.State, 479 So.2d at 708. Having portrayed himself as "pure," on direct examination by his own attorney, this Court held that Quinn opened the door for the state to attack his credibility on cross examination by questioning him about a drug sale which he made four days prior to the one for which he was on trial.Quinn, 479 So.2d at 708. The following excerpt from Quinn
provides a cogent explanation of the rule of law regarding the use of prior criminal acts for impeachment purposes.
 Without doubt, testimony that Quinn was involved in a November 4 marijuana sale was not admissible to establish the truth of the facts there asserted. When, *Page 597 
however, in response to questions by his own attorney, Quinn testified on direct examination that he did not sell marijuana and had never sold marijuana to anyone at any time, he "opened the door". Evidence of the prior marijuana sale was still not admissible to establish the truth of those facts. Such questions were, however, permissible for purposes of impeaching Quinn's credibility. This question has been considered in Pierce v. State, 401 So.2d 730, 732-33 (Miss. 1981) which holds that in similar circumstances cross-examination questions such as those put by the state were legitimate for impeachment purposes.
 We have recently considered a related question in Tobias v. State, 472 So.2d 398 (Miss. 1985). In Tobias we held the state's impeachment effort was impermissible and reversed. Tobias is distinguished from Pierce and the case at bar in that in Tobias
it was the state that initiated the matter by eliciting from the defendant the response it later sought to impeach by showing the defendant's prior criminal but short of conviction activities. For reasons we trust are obvious, it is wholly unfair that the state may circumvent our well established rule from Donald, Hughes [v. State, 470 So.2d 1046], West [v. State, 463 So.2d 1048] and Tucker cases cited above in the manner attempted in Tobias.
Un like Quinn, Spraggins, upon direct examination, did nothing to "open the door" which would allow the state to launch an attack on his credibility and parade the prior conviction and arrest before the jury. In fact, Spraggins went no where near the door. On cross examination by the state, Spraggins testified that his girlfriend, Beverly Fondren, did not use cocaine until Gates moved back to Mississippi from Wisconsin in the summer of 1987. By 1988, Spraggins testified that Beverly was using cocaine, and he did not approve of her use. While being cross-examined by the state, Spraggins testified that he moved in with Beverly for a period of time in 1988, in an effort to prevent her from using cocaine:
 Q. You just told us you moved in with Beverly Ann the first of '88.
 A. Yes, sir.
 Q. You told us that you stayed with her in an effort to talk her out of using cocaine.
 A. Yes, sir, I seen that I couldn't talk her out so I got out to keep her from taking me down.
 Q. Oh, so you got out?
 A. Yes, sir.
In 1988, approximately one year prior to the time Spraggins allegedly sold cocaine to Gates, Spraggins testified that he was living back and forth between Beverly's house and his mother's house. Spraggins' testimony was that at some time in 1988, he moved in with Beverly in an effort to get her weaned from cocaine. When he failed, he moved back into the house with his mother. Then, at some point in time later on, Spraggins moved back in with Beverly.
Clearly, this is not the sort of "door opening" testimony which permissibly triggers the state's use of a prior drug conviction, a prior drug arrest, and other bad acts concerning drug activity to impeach his credibility. Nor is it the "pure as the driven snow" picture which Quinn sought to convey to the jury. Furthermore, we have not even discussed the fact that this allegedly "door opening" testimony was elicited entirely on cross-examination by the state with no denial on direct examination which could "set up" the state's impeachment.Quinn, far from supporting the state's position, is inapposite. Citing Tobias v. State, 472 So.2d 398 (Miss. 1985),Quinn clearly instructs that the state may not initiate the "door opening" testimony which it later seeks to impeach by the defendant's prior criminal record and dealings. See Quinn v.State, 479 So.2d 706, 708 (Miss. 1985) (quoted above).
Recently, this Court decided Stewart v. State, 596 So.2d 851
(Miss. 1992). In Stewart, this Court reiterated the rule ofQuinn noting that when an accused, on direct examination seeks to exculpate himself, such testimony is subject to impeachment on cross-examination, even though it may reveal that the defendant committed another *Page 598 
crime unrelated to the one for which he is on trial. Stewart,
596 So.2d at 853. In Stewart, this Court reversed and remanded for a new trial finding that the state's impeachment exceeded the door opening invitation which the defendant extended on direct examination. "[T]he prosecution's impeachment privilege may not exceed the invitation extended." Stewart, 596 So.2d at 853.See Blanks v. State, 547 So.2d 29, 37 (Miss. 1989).
In addition to Quinn, Stewart, and Tobias, to like effect are Hudgins v. State, 569 So.2d 1206, 1209 (Miss. 1990), andGallion v. State, 469 So.2d 1247, 1250 (Miss. 1985).
Finally, we note briefly in passing that even if the state could meet the requirements of a using a prior felony conviction for impeachment purposes, the lower court in this case failed to conduct a M.R.E. 601(a)(1) balancing test to assess the prejudicial impact of the prior drug conviction in Tennessee along with its probative value in this case. See M.R.E. 609(a)(1); Peterson v. State, 518 So.2d 632, 636 (Miss. 1987).
In conclusion, the trial court committed reversible error in allowing the state to question the defendant about a prior conviction, a prior arrest, and other bad acts — all in violation of M.R.E. 404(b) and well-settled case law. Therefore, we reverse Spraggins' conviction for the sale of crack cocaine; vacate the sentence of fifteen years imprisonment, $2000.00 fine, and restitution fees totalling $130.00; and remand this case to the Panola County Circuit Court, Second Judicial District, for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.