615 So.2d 1202 (1993)
Robert KING
v.
STATE of Mississippi.
No. 90-KA-1234.
Supreme Court of Mississippi.
March 18, 1993.
*1203 Richard W. Hamilton, Robert A. Pritchard, Pritchard & Chapman, Pascagoula, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and McRAE and ROBERTS, JJ.
McRAE, Justice, for the Court:
Robert King appeals from a conviction in the Circuit Court of Adams County for sale of a controlled substance, marijuana, as a second subsequent offender under Miss. Code Ann. § 41-29-147 (1972), and sentence of twenty-four (24) years in custody of the Mississippi Department of Corrections.[1] He alleges that the trial court erred in (1) refusing to exclude alleged erroneous *1204 evidence introduced by the State and (2) making prejudicial comments in the presence of the jury. Finding that reversible error exists in the court's admission of extrinsic testimony, we reverse and remand for a new trial.

FACTS
On March 29, 1989, Michael Diggs, a confidential informant wired for sound, met King at a Natchez motel for the purpose of purchasing marijuana. King called his wife, who picked up King and Diggs, and the group proceeded to travel to the nearby community of Cannonsburg. During the trip, they were under surveillance by Bureau of Narcotics agents, who followed in other vehicles. Upon arriving in Cannonsburg, King exited the vehicle and entered the mobile home of Ray White. He returned to the vehicle with a bulge under his outer clothing. The parties returned to Natchez where the marijuana sale was concluded in the motel room rented by Diggs.
King was subsequently indicted, tried and convicted by a jury in the Circuit Court of Adams County.

I.
During trial, Ray White, occupant of the mobile home in Cannonsburg, testified as a witness for King. White related that on March 29, 1989, he was outside his trailer washing his car when King arrived. He stated that King conversed with him in his yard about a loan to use for gambling, that he refused to make the loan, and neither he nor King entered his mobile home on the occasion.
On cross-examination, White stated that he had not been convicted of any crimes. The State then requested and elicited the following information from White without objection from the defense:
Q. Now, you say that you were  you've never been convicted of a crime?
A. No, I haven't.
Q. Isn't it true that you had been supplying dope to Robert King?
A. No, I haven't.
Q. You deny that?
A. Yes, I do.
Q. Isn't it true that you would get in quantities of marijuana and then you would sell parcels of it off, some of which to Robert King and some to other people?
A. No.
Q. You deny that?
A. Yes.
* * * * * *
Q. Now, do you know a  let's see  do you know a man named Little John?
A. Little John?
Q. Yes, Sir, from Louisiana?
A. No.
Q. Let me ask you this: do you remember back April 1st of this year being set up to receive a dope shipment?
A. Being set up to receive a one?
Q. Yes, Sir, where you were supposed to receive a shipment of marijuana?
A. No.
Q. You deny that?
A. I don't remember  I don't remember being set up to receive a dope shipment, no, I don't.
Q. OK. I want to ask you very specifically about this back on April 1st of this year, which was a Sunday, do you remember going out to the, this roadside park out in Jefferson County to meet somebody to pick up some marijuana?
A. To meet someone?
Q. Yes, sir.
A. No.
Q. Is it true? Not true? Or you don't remember or what?
A. I don't remember going out to the roadside park meeting anybody to pick up no marijuana, no.
Q. Because you don't deal in marijuana; do you?
A. No.
Q. And that's your testimony up here before the Court today?
A. Yes, it is.

*1205 Q. All right. Now, you say you found out  you heard through some friends about Robert's case; did you know that Robert was supposed to have come out and got the dope from your trailer?
A. No.
Q. You didn't know anything about that?
A. No.
Q. Did you know about that before I just asked you about that? When did you first find out about that?
A. When I first found out about Robert King and the incident was like about two or three weeks after Robert King and this particular incident from just different peoples in the street saying that Robert King had sold to a narcotics agent. But, no, I didn't know he had supposed to have came and got the dope from me; no, I didn't know that.
Q. You didn't know that till you come up to Court today?
A. Right.
Q. And you do admit that the three people came out to your house that day, you remember that on that particular day?
A. That's correct.
Cross-examination of White concerning the details of other alleged criminal activities of King and himself was clearly violative of Miss.R.Evid. 608(b), which provides:
(b) Specific Instances of Conduct. Specific instances of conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
In the Comment to Miss.R.Evid. 608 we are told:
Subsection (b) prohibits the impeachment of a witness by specific acts of conduct, but it provides two important exceptions. First, a witness may be impeached by a criminal conviction... . The second exception of Rule 608 goes further than pre-rule Mississippi practice. This exception allows for impeachment by specific acts which are something other than criminal convictions when the character trait of truthfulness of the witness being cross-examined is under attack. The second exception also allows the witness to be cross-examined regarding specific acts regarding the truthfulness of another witness about whom he has testified. This exception only applies when the character trait of truthfulness or untruthfulness is being explored.
The exceptions listed in the Comments do not warrant or permit the actions of the State in this case, particularly, the questions pertaining to the involvement of King in other specific crimes with White. While the evidence elicited was clearly in contravention of Miss.R.Evid. 608(b), the error was not preserved for review by this Court. Miss.R.Evid. 103(a)(1) tells us:
(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; ... .
It is elementary that, for preservation of error for review, there must be contemporaneous objections. Smith v. State, 530 So.2d 155, 161-62 (Miss. 1988). If this were the sole basis for reversible error, we would have no hesitancy in holding that the alleged error was waived by King's failure to timely object, but there is more. After eliciting testimony from White concerning his and King's involvement in an alleged independent offense, the *1206 State evoked additional testimony on the collateral issue.
On rebuttal, the State called Lee Anthony Ford, employee of the Natchez Police Department and the following transpired:
Q. All right. I'd like to ask you specifically whether or not you had an occasion to see him (White) on April the 1st of this year?
A. Yes, Sir, I did.
Q. All right, would you tell us where you saw him and under what circumstances?
MR. BLALOCK: I'm going to object to this line of questioning, Your Honor. If he's going to try to prove some independent crime against Mr. Ray White, it's not an issue in this case; this man had nothing to do with this case in question, and the fact that he is eliciting today is something that I have no way to impeach and have no prior knowledge of. Today is the first time in my life I've seen Ray White; they've not established whether it's Ray White or the guy who identified himself today here as Kevin Ray White.
THE COURT: Mr. Blalock, you called Mr. White as your witness.
MR. BLALOCK: I understand the rules no longer require an attorney to vouch for a witness, Your Honor.
THE COURT: This is cross examination nobody has asked you to vouch for anybody. Proceed, objection overruled.
* * * * * *
A. The circumstances were involved with, Natchez Drug Unit along with the Louisiana Narcotic Unit out of Catahoula Parish and Investigator Blunchi, we had the occasion of stopping a subject that was delivering drugs to this area. He had approximately nine kilos of marijuana. There were several people the drugs were to be delivered to here in Natchez, Vidalia, and on back to Catahoula. We stopped the subject, and Mr. Ray White, who we have prior intelligence on; we have investigated for quite some time as far as selling drugs in this community, he had five 
MR. BLALOCK: I object to that line of questioning.
As this testimony indicates, King's attorney did, at this time, enter a contemporaneous objection. We hold that the trial court erroneously overruled the objection. The court should not have admitted Ford's testimony over the objection of King's attorney that the State was going to try to prove some independent crime against the witness.
The evidence elicited on cross-examination of defense witness White, while violative of Miss.R.Evid. 608(b), was not reversible error per se and no timely objection was made as required by Miss.R.Evid. 103(a)(1). However, when the State introduced the so called "rebuttal evidence" of witness Ford, timely objection was made and the court clearly erred in admitting Ford's testimony.
Under Miss.R.Evid. 103, which governs the effect of erroneous rulings, an admission of improper evidence will lead to reversal when it affects a substantial right of a party and objection to the evidence appears on the record. Receipt of improper evidence by the trial court is reversible error when it affects a defendant's right to a fair trial. When faced with the objection to improper evidence, the trial judge has two options. First, he may sustain the objection and admonish the jury accordingly, or next, he may allow the evidence and give a specific cautionary instruction to the jury at trial's end. See Hall v. State, 539 So.2d 1338 (Miss. 1989); Darby v. State, 538 So.2d 1168 (Miss. 1989). The trial court did neither.
In a similar fact situation, we held that a defendant was prejudiced by the introduction of testimony from an alleged accomplice regarding a prior attempt to grow marijuana. We found that the trial judge, in failing to give a cautionary instruction or a jury admonishment, caused the defendant to be prejudiced and denied the defendant a fair trial by the introduction of such evidence. Hudgins v. State, 569 So.2d 1206, 1207 (Miss. 1990). In this case, White was a crucial defense witness and the attempt to *1207 impeach his testimony by evidence of specific instances of collateral misconduct with the defendant involving other crimes was highly prejudicial. Under the circumstances, the cause must be reversed and remanded for a new trial. We address the remaining asserted errors as they may require resolution during another trial.

II.
Diggs, a confidential informant who testified for the State, referred to his notes during testimony. King objected, alleging violation of Miss.R.Evid. 803(5) because Diggs failed to demonstrate an exhaustion of memory. Miss.R.Evid. 803(5) provides:
(5) Recorded Recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party. (emphasis added)
This rule should be read in conjunction with Miss.R.Evid. 612, which provides:
Writing Used to Refresh Memory. If a witness uses a writing to refresh his memory for the purpose of testifying, either (1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce into evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not related, and order delivery of the remainder to the party entitled thereto... .
The Comment to Miss.R.Evid. 612 states:
The pre-rule Mississippi practice of using a writing to refresh a witness' memory has often been confused with the past recollection recorded exception to the hearsay rule. Prior to the rules, a party who simply wanted to refresh a witness memory often felt compelled to satisfy the foundation requirements of the hearsay exception. Rule 612 eliminates this state of confusion and permits any writing to be used, regardless of whether it is in compliance with the foundation requirements of the hearsay exception. (emphasis added).
The trial court did not abuse its discretion in permitting the confidential informant and narcotics agents to refer to their notes. See Levingston v. State, 525 So.2d 1300, 1302-04 (Miss. 1988); Gardner v. State, 455 So.2d 796, 799-800 (Miss. 1984).

III.
Although King urges specific instances of alleged error by the trial judge in comments made during trial, we need not decide the validity of the claims since an examination of the record shows King failed to object to any comment of the court. In Norman v. State, 385 So.2d 1298, 1302 (Miss. 1980) we articulated:
We need not decide, however, whether the trial judge impermissibly "crossed the line between judging and advocacy," see McCormick, Evidence, section 8 (1972), because Norman's failure to object ... precludes appellate review.
In Ratliff v. State, 313 So.2d 386, 388 (Miss. 1975), we stated:
[T]he record does not indicate that defendant made any objection to either the judge's statement or his questioning of the witness. The rule is well established that contemporaneous objection is necessary to preserve the right to raise an error on appeal.
Moreover, the complained of comments made by the trial judge, when read in the context of the entire record, do not reveal that he impermissibly crossed the line between judging and advocacy.
*1208 Since we find that reversible error resulted from the trial court's action in overruling the defense counsel's objection to Ford's testimony elicited in violation of Miss.R.Evid. 608(b), we reverse and remand for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, ROBERTS and SMITH, JJ., concur.
NOTES
[1] The attorneys representing King on appeal were not the same attorneys who represented him at the trial.