SOUTHWICK, P.J.,
concurring.
¶ 16. My disagreement centers on the issue of Slaughter’s possible prior threats with a weapon. I too would reverse and remand. In my view, though, the majority announces a rule that improperly permits the introduction of extrinsic evidence to rebut a collateral matter and will tend to create additional error in other cases.
¶ 17. My first point is fairly minor. The majority refers to the evidentiary rule regarding prior inconsistent statements. MRE 613(b). Even if the assertion by defense counsel is considered to be Slaughter’s own statement, a reasonable holding, there is no “prior statement made by him” which is being introduced. M.R.E. 613(a). The prior evidence is not of a statement but of the action of the accused of having once used a gun on someone else. In my view Rule 613(b) has no application
¶ 18. Secondly, I agree that even though the defense counsel’s statement is not evidence, it does remain suspended in the trial and potentially affects the jurors in their deliberations. A precedent relied upon by the majority holds that the State may respond in its closing statement to the failure of the defense to follow through on what it said in the opening statement that it would prove. Taylor v. State, 672 So.2d 1246, 1269 (Miss.1996). The Taylor defense counsel’s opening argument included the assertion that the State’s witnesses *1097 were not reliable because they were not law enforcement officers. In closing argument the prosecutor responding by saying that these witnesses were credible even though not officers. Had they been officers, the prosecutor speculated that the defense approach would have been to suggest the officers had beaten the statements out of the defendant: “[i]f you have it one way, they will get up here and say, scream to you it should have been another.” Id. The court held that this suggestion that the defense would distort whatever facts were presented was regrettable and overzealous advocacy in response to a defense tactic, but it was not reversible error. Id. at 1270.
¶ 19. In the Fifth Circuit case relied upon in Taylor, defense counsel “suggested the government’s female witnesses had engaged in various illegal acts and intimate relationships with a government investigator and also complained that the witnesses would not answer questions before the trial. During closing arguments, the prosecutor rebutted the charges” by commenting how despicable those comments were. United States v. Jennings, 724 F.2d 436, 444 (5th Cir.1984).
¶ 20. Neither Taylor nor Jennings concerned whether the State may introduce evidence to rebut an opening statement. In our case the State went well-beyond responding with argument but cross-examined Slaughter and introduced a rebuttal witness. The initial question is the right of the State to cross-examine the accused on the point made by his counsel. At the minimum, once Slaughter took the stand I would consider defense counsel’s opening statement to be the equivalent of an assertion by the accused during his direct testimony. If he could be cross-examined about his own statement that he never threatened anyone, then he can be cross-examined about his counsel’s similar statement.
¶ 21. The normal limits for impeachment would permit cross-examination on this sort of assertion. One supreme court precedent explained a still-earlier precedent this way:
In response to questions posed by his own attorney, Quinn purposely portrayed himself as “pure as the driven snow.” “To be sure, every defendant brought to trial may, if he wishes, try to paint himself as being as pure as the driven snow.” Quinn v. State, 479 So.2d [706, 708 (Miss.1985) ]. Having portrayed himself as “pure,” on direct examination by his own attorney, this Court held that Quinn opened the door for the state to attack his credibility on cross examination by questioning him about a drug sale which he made four days prior to the one for which he was on trial.
Spraggins v. State, 606 So.2d 592, 596 (Miss.1992). In Spraggins the State did not try to introduce other evidence of the prior transactions, but only questioned the defendant. The court did not state a specific evidentiary rule that would permit the testimony, but cited approvingly two pre-Rules case whose principle is one of an accused’s “opening the door” with a denial. Id. at 596-97, citing Quinn, 479 So.2d at 708, and Pierce v. State, 401 So.2d 730, 732-33 (Miss.1981). In further explanation of these pre-Rules decision, the court held that when an accused “on direct examination seeks to exculpate himself, such testimony is subject to impeachment on cross-examination, even though it may reveal that the defendant committed another crime unrelated to the one for which he is on trial.” Spraggins, 606 So.2d at 597-98, citing Stewart v. State, 596 So.2d 851, 853 (Miss.1992).
¶ 22. Though some of the evidentiary rules are related, no specific rule directly addresses the right of the State to respond on cross-examination to inaccurate testimony on direct. That does not mean Spraggins and similar cases ignore the evidentiary rules. In addition to specific rules referring to using character evidence or prior crimes to impeach, one rule states that cross-examination is “not limited to *1098 the subject matter of the direct testimony and matters affecting the credibility of the witnesses.” M.R.E. 611(b). Instead, under “wide-open cross-examination any matter may be probed that is relevant.” M.R.E. 611(b) cmt. This and rules granting the trial judge broad discretion in controlling introduction of evidence (M.R.E. 611(a)) and permitting the introduction of evidence whose probativeness is not outweighed by its prejudicial effect (M.R.E. 403), all combine to allow reasonable response to the invitation given on direct examination by a witness’s testimony.
¶ 23. Under that authority, because of his counsel’s assertion that he had never threatened anyone, Slaughter could be asked about the other incident. Slaughter denied the threat. So far no error in my view occurred, but the State did not stop there. To determine the propriety of moving beyond cross-examination, we are assisted by one recent decision. Similar facts arose in Nicholson v. State, 704 So.2d 81 (Miss.1997). Nicholson was the coach of a girl’s softball team and was being tried for sexual battery of a member of the team. Nicholson denied the incident and also stated that he would never do anything like this to any child. As a rebuttal witness the State called another member of the team who said Nicholson had done something similar to her. Id. at 83.
¶ 24. The supreme court examined a variety of evidentiary rules regarding the issue. Most basic is the right of the defendant to put on evidence of a pertinent trait of his character and for the prosecution to rebut. M.R.E. 404(a)(1). In a cited precedent in which the defendant had denied that he would ever hurt anyone for money, the court had found that this was relevant evidence under Rule 404(a) and the State could rebut it by offering evidence that he had previously been convicted of such a crime. Rowe v. State, 562 So.2d 121, 123 (Miss.1990), cited in Nicholson, 704 So.2d at 84. Though Rowe seemed quite similar, the court distinguished it by emphasizing that the evidence was of a prior conviction, not just of a prior uncharged bad act. Nicholson, 704 So.2d at 84-85.
¶ 25. The court held that had Nicholson been convicted of a similar assault, that evidence might have been admissible as impeachment. Nicholson, 704 So.2d at 85, M.R.E. 609. Usually Rule 609 is used to permit introduction of prior convictions to prove that the accused is not trustworthy; crimes involving dishonesty are automatically admissible and others are if their probative value outweigh their prejudicial effect. Peterson v. State, 518 So.2d 632, 636 (Miss.1987). Admission does not depend on the witness having denied the crime, but depends instead on whether the conviction is probative that his testimony is untrustworthy. Five factors must be evaluated on the record for admission; had Nicholson been convicted of a similar prior crime, that would be a factor weighing against admitting the evidence. Id. at 637. Nonetheless, based on Nicholson, Rule 609 is support for using a prior conviction if the accused on direct opens the door by denying ever having engaged in similar conduct. What is not clear is why Rule 609 becomes an impediment to allowing the admission of Rule 404(a)(1) evidence that is not a prior conviction. If it is a proper trait of character, the evidence would not appear to need to pass through the filter of Rule 609. Only Rule 403 regarding the prejudicial nature outweighing it probative value would seem to block it.
¶ 26. Another rule addressing the introduction of evidence to disprove a defendant’s testimony is Rule 608. The rule is captioned “Evidence of Character and Conduct of Witness.” Rule 608(a) permits attacking credibility by introducing opinion and reputation evidence but only on the witness’s character for truthfulness. M.R.E. 608(a). It has been called a new concept in state practice, in that it permits the witness’s conduct that has not led to a criminal conviction to be the basis for cross-examination if the conduct is probative on the character for truthfulness. Carolyn Ellis Staton, Mississippi Evidence 150 (3d ed.1995). It does not *1099 appear to me that asking on cross-examination whether the witness was lying on direct when he denied some event is the subject matter of this rule. Instead, the Rule applies to situations such as in one suit when a witness was asked if she had ever altered a prescription given her by a doctor; that would tend to show dishonesty in the same manner as would conviction of a crime of dishonesty. Ball v. Sloan, 569 So.2d 1177, 1179 (Miss.1990). The supreme court held this was proper cross-examination but also the end of the matter. Id. After the witness denied doing so, the pharmacist was called to state that the prescription appeared altered. That was reversible error. Id.
¶ 27. If Rule 608 is seen as applicable, it would be because showing that a witness has lied on the stand, if only about the color of the otherwise irrelevant automobile that she drove to court, tends to show a character for untruthfulness. Rule 608 discusses both character and reputation. “Character” is the inner reality; “reputation” is the community perception. Lying on the stand might be seen as Rule 608 character even though it has nothing to do with reputation. Whether Rule 608 is the vehicle that admits this evidence is largely irrelevant, since cases such as Spraggins dealing with “door opening” would permit as much. The clear error if Rule 608 applies is that it blocks inquiry beyond cross-examination. Though the State under Rule 608 could on cross-examination challenge Slaughter’s denial that he had ever threatened anyone, that is a “specific instance of conduct of the witness, [introduced] for the purpose of attacking or supporting his credibility,” that may not be “proved by extrinsic evidence.” M.R.E. 608(b).
¶28. The Nicholson court addressed Rule 608 to say that Rule 608(b) would prevent calling a rebuttal witness. Nicholson, 704 So.2d at 85. It also held that Rule 608 applies to character evidence of witnesses, apparently contrasting that with broader use to impeach as to misstatements. Id. at 87. In my view Rule 608 does not apply but should be limited to evidence generally probative of the character for untruthfulness. Even so, Rule 608 is not necessary to permit a response on cross-examination to the invitation granted by direct testimony. Making it apply tends to confuse the meaning of the rule.
¶ 29. It appears Nicholson was driven by a number of concerns, including the general nature of the denial by the accused — “I’ve never done anything wrong to any child.” Id. at 88. Another factor was the case law that other bad acts regarding sexual abuse under Rule 404(b) could be inquired into only if the acts were with the same child. Id. at 83-84.
¶ 30. Nicholson is a well-conceived effort to explain the at-times conflicting rules regarding evidence such as this. Though perhaps not completely successful in making all the strands of the evidentiary rules and caselaw into a seamless web, the case does stand for the proposition that a witness’s general denial of having engaged in other similar criminal conduct does not open the door to extrinsic evidence of that conduct. The case could even be read not to permit cross-examination of the witness, but if so that is probably over-broad writing. The invitation issued in the present case by the defense counsel’s opening statement was to cross-examine the accused regarding whether he had ever threatened anyone previously with a gun. To proceed to prove through other witnesses the facts of that possible assault was improper as it tended to put Slaughter on trial for a crime other than that in the indictment.
¶31. Therefore, calling the purported victim of the previous gun-waving, Lee Felder, to give extrinsic evidence was reversible error. I disagree with the majority that his examination could be narrowly tailored; I find it was prohibited.
McMILLIN, C.J. AND IRVING, J., JOIN THIS SEPARATE OPINION.